731 So.2d 208 (1999)
Joshua Douglas REEVES
v.
STRUCTURAL PRESERVATION SYSTEMS, et al.
No. 98-C-1795.
Supreme Court of Louisiana.
March 12, 1999.
Gracella G. Simmons, Collin J. LeBlanc, Keogh, Cox & Wilson, Baton Rouge, for Applicant.
Robert W. Thomas, William T. Fontenot, Thomas & Hardy, Lake Charles, for Respondent.
VICTORY, J.[*]
We granted this writ to determine whether an employer committed an intentional act under the intentional act exception to the Workers' Compensation Act (the "Act") by directing an employee to move a sandblasting pot manually, a procedure which was prohibited by OSHA and which the employee's supervisor feared would eventually lead to injury. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and find that such conduct does not amount to an intentional act; thus, plaintiff's *209 remedy is limited to the Workers' Compensation Act.

FACTS AND PROCEDURAL HISTORY
On October 5, 1994, plaintiff, Joshua Reeves ("Reeves"), was injured while moving a sandblasting pot in the course and scope of his employment as a general laborer for Structural Preservation Systems, Inc. ("SPS"), which was providing industrial sandblasting services at the PPG plant in Calcasieu Parish. A sandblasting pot is a large metal pot, approximately four feet high, which when empty weighs between 350 to 400 pounds and which can hold up to 1,000 pounds of sand. Although the pot had wheels at the base and a handle, OSHA required that a sticker be placed on the pot which read "DO NOT MOVE MANUALLY." On previous job sites, the pot was moved by a forklift. Reeves' supervisor testified that when SPS arrived at the PPG plant, SPS did not bring a forklift and although he requested a forklift several times, SPS never supplied one. The supervisor testified that he borrowed PPG's forklift on several occasions in order to move the pot. He also testified that because he feared that someone would eventually get hurt moving the pot manually, he sometimes moved the pot manually himself. The pot was also moved manually on numerous occasions by other SPS workers without incident.
On the day of the accident, the supervisor directed Reeves, one of his strongest workers, to manually move the pot approximately 40-50 feet.[1] Reeves had previously moved the pot manually by himself several times without complaint and had never had any trouble doing so. After Reeves had moved the pot about halfway with no trouble, the supervisor directed another worker, Darryl Chapman, to help Reeves. The supervisor testified that he felt they could move the pot safely. However, as Chapman positioned himself on one side of the pot and Reeves pulled on the other side, it fell over on Reeves, crushing his knee and injuring his back.
Reeves filed suit against SPS and its insurer and Chapman, alleging that his injuries were caused by the intentional acts of SPS and Chapman. Following a two day jury trial, the jury found that SPS's actions were intentional and awarded him damages for pain and suffering, lost wages and past and future medical expenses. The jury also found that contrary to Reeve's allegations, Chapman did not intentionally push the pot over on Reeves and Chapman was dismissed from the lawsuit. The Third Circuit affirmed, finding that SPS committed an intentional act within the meaning of the intentional act exception because "SPS supervisory personnel knew that the sandblasting pot could not be moved safely without a tow motor and [that] moving it manually violated OSHA safety regulations, yet they failed to provide the appropriate equipment." Reeves v. Structural Preservation Systems, et al., 97-1465 (La.App. 3 Cir. 6/3/98), 716 So.2d 58, 61. We granted a writ to consider the correctness of this ruling. Reeves v. Structural Preservation Systems, et al., 98-C-1795 (La.10/30/98), 723 So.2d 966.

DISCUSSION
Since 1914, workers' compensation has traditionally been a quid pro quo remedy in that the employee is entitled to fixed benefits if his injury occurs during the course and scope of his employment, regardless of the employer's lack of fault or the employee's own fault, and in exchange, the employer is relieved of the prospect of large damage judgments. However, until 1976, employees were free to pursue other tort remedies against executive officers and co-employees for their work-related injuries.
*210 By Act 147 of 1976, the legislature amended the Workers' Compensation Act in two important respects. It provided that workers' compensation shall be the exclusive remedy against not only the employer, but also against any principal, officer, director, stockholder, partner or employee of the employer or principal who was engaged at the time of the injury in the normal course and scope of his employment. It also provided that the employee is not limited to workers' compensation and may pursue any other remedy where his compensable injury resulted from an intentional act.
As amended in 1976, Section 1032(B) reads:
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
La. R.S. 23:1032(B).
The legislative history is very enlightening as to the intent of the legislature in drafting this exception. The amendment was introduced as House Bill No. 354 and contained an exception from the exclusive coverage of the Act for the liability of the employer resulting from "an intentional or deliberate act." The House debated and rejected two amendments offered on the bill. The first amendment would have provided an award of double the normal compensation against an employer when the death, injury or disease "is caused by the employer's violation of a recognized safety rule or regulation, his failure to provide a safety device required by a recognized safety rule or regulation or by a statute, or by gross negligence on the part of a supervisory employee ..." Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20. The second amendment would have provided that the exclusive coverage of the Act did not apply "if such injury or compensable sickness or disease is caused by the gross negligence, as hereinafter defined, of said party or parties. Gross negligence exists when there is such disregard of the interest of others that the tortfeasor's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonable careful man under like circumstances. Ordinary negligence sufficient to sustain a cause of action under Article 2315 of the Louisiana Civil Code is not sufficient to constitute gross negligence as defined in this section." Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 21. The Senate likewise debated and rejected two similar amendments. Official Journal of the Senate, July 12, 1976, p. 42. The Senate also removed the words "or deliberate" from the bill without objection. Official Journal of the Senate, July 12, 1976, p. 41. As commentators have stated, "[t]he only reasonable conclusion to be drawn from the legislative process is that both houses of the legislature rejected attempts to make the exception any broader than `intentional' acts of the employer, thereby giving the exception a narrow scope, limited to conduct which is truly intentional." Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers' Compensation Law & Practice, § 365, p. 206 (3rd ed.1994). "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." Larson, 2A Workmen's Compensation Law, § 68.13 (1989).
In determining the meaning of the phrase "intentional act," this Court took into account the intent of the legislature in Bazley v. Tortorich, 397 So.2d 475, 480 (La.1981) as follows:
After considering broader penalties that would have provided double benefits for *211 an employer's violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee, which caused injury, death or disease, Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20, our legislature chose to impose a sanction for intentional wrongs by making the exclusive remedy rule inapplicable to such acts. Because of the general practice of severely punishing intentional wrongdoers, which is widely accepted in the field of workers' compensation, because of the received meaning and acceptance of the statutory language, and considering the object of the legislation, we conclude that the words "intentional act" mean the same as "intentional tort" in reference to civil liability.
We held that the meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." 397 So.2d at 481. In Bazley, where the plaintiff did not allege that his co-employee either desired the consequences of his acts or believed they were substantially certain to follow his acts, we held that the co-employee's acts of operating a garbage truck without a working horn, disregarding mechanical and electrical maintenance standards, failing to keep a lookout, failing to stop in a safe place and failing to warn plaintiff of danger did not amount to an intentional act. Id.
Since the Bazley case, this Court has continued to narrowly construe the intentional act exception. Under such narrow construction, we have held that "violation of a statute alone is not per se such an intentional act as will result in the employer's tort liability if injuries are sustained by an employee because of the violation." Mott v. River Parish Maintenance, Inc., 432 So.2d 827, 832 (La.1983) (violation of Child Labor Law). We have also reversed court of appeals' decisions which had found employers' conduct to have met the intentional act exception. In Casto v. Fred's Painting, Inc., we reversed the Fifth Circuit which had found the employer committed an intentional act by knowingly maintaining a refrigerator where paint and some food were stored which produced an electrical shock each and every time a person came into contact with the refrigerator's metal surface. Casto v. Fred's Painting, Inc., 96-405 (La.App. 5 Cir. 1/15/97), 688 So.2d 72, rev'd, 97-0374 (La. 4/4/97), 692 So.2d 408; see also Alexander v. Ingersoll-Rand, 95-1816 (La.10/27/95), 661 So.2d 1365.[2]
Our courts of appeal have likewise narrowly construed the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment. Compare Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4 Cir. *212 8/30/94), 642 So.2d 311, writ denied, 94-2445 (La.12/9/94), 647 So.2d 1110 (failure to provide safe working environment in grain storage bin); Leger v. Hardy Rice Drier, Inc., 93-1512 (La.App. 3 Cir. 6/1/94), 640 So.2d 650 (maintaining forklift in unsafe condition); Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4 Cir.), writ denied, 576 So.2d 49 (La.1991) (violations of OSHA and other accepted industry safety standards); Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4 Cir.), writ denied, 571 So.2d 649 (La. 1990) (allowing worker to operate dangerous equipment); Holliday v. B.E. & K. Const. Co., 563 So.2d 1333 (La.App. 3 Cir. 1990) (knowledge that machine is dangerous and that its use creates a high probability that someone will eventually be injured from such use); Davis v. Southern Louisiana Insulations, 539 So.2d 922 (La. App. 4 Cir.1989) (failure to provide ladders and scaffolding); Hood v. South Louisiana Medical Center, 517 So.2d 469 (La. App. 1 Cir.1987) (failure to maintain safe working conditions); Taylor v. Metropolitan Erection Co., 496 So.2d 1184 (La.App. 5 Cir.), writ denied, 497 So.2d 1388 (La. 1986) (failure to provide scaffold worker with safety belt); Snow v. Gulf States Utilities Co., 492 So.2d 31 (La.App. 1 Cir.), writs denied, 496 So.2d 349, 356 (La.1986) (allowing worker to work too closely to energized wires); Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4 Cir.), writ denied, 415 So.2d 953 (La. 1982) (failure to provide specifically requested safety equipment); Cortez v. Hooker Chemical and Plastics Corp., 402 So.2d 249 (La.App. 4 Cir.1981) (deficiently designed machinery and disregard of OSHA standards); Erwin v. Excello Corp., 387 So.2d 1288 (La.App. 1 Cir.1980), writs refused, 396 So.2d 1242 and 397 So.2d 1363 (La.1981) with Trahan v. Trans-Louisiana Gas Co., 618 So.2d 30 (La.App. 3 Cir.1993) (employer committed intentional act by repeatedly exposing employee to the chemical mercaptan where employee had become ill on two prior occasions after exposure to mercaptan); Wainwright v. Moreno's, Inc., 602 So.2d 734 (La.App. 3 Cir.1992) (employer committed intentional act by ordering employee to work in a ditch that had caved in the previous day and which looked as though it would cave in again). Likewise, gross negligence does not meet the intentional act requirement. Gallant v. Transcontinental Drilling Co., 471 So.2d 858 (La.App. 2 Cir.1985).
Thus, based on the above cases and the legislative purpose behind the enactment of the intentional act exception, the fact that OSHA guidelines prohibited the pot from being moved manually and that the supervisor had specifically requested a forklift from SPS does not meet the strict requirements of that exception.
Plaintiff further alleges that because the SPS supervisor feared that someone would get hurt if the pot was moved manually but that he ordered plaintiff to move the pot manually in spite of this knowledge, SPS's conduct meets the "substantial certainty" test. We disagree. Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation.
The "substantial certainty" element has been explained in this context as follows:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter takes the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only "intended" *213 to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers' Compensation Law & Practice, § 365, p. 208.
"`Substantially certain to follow' requires more than a reasonable probability that an injury will occur and `certain' has been defined to mean `inevitable' or `incapable of failing.'" Jasmin v. HNV Cent. Riverfront Corp., supra at 312. "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the `substantial certainty' requirement." Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Id. (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4 Cir. 1991)).
Although the jury was told that the supervisor feared that someone would eventually get hurt by manually moving the pot, it is undisputed that plaintiff, as well as other SPS workers, had moved the pot manually on several occasions and no one had ever been injured. In addition, the supervisor testified that when he asked plaintiff and the co-worker to move the pot on the day of the accident, he believed that they could do so without incident. In fact, plaintiff had already moved the pot halfway by himself with no trouble. Thus, it cannot reasonably be said that it was substantially certain that plaintiff would be injured by manually moving the pot.
While factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review, Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132, the jury's conclusion that SPS's conduct constituted an intentional act was not reasonable in light of the record reviewed in its entirety. There was simply no evidence presented that the accident was "substantially certain" to occur. Thus, the jury clearly erred in determining that SPS committed an intentional act and the court of appeal erred in affirming the jury's decision.[3]

CONCLUSION
The employer's conduct in this case, while negligent or perhaps even grossly negligent, does not meet the "substantial certainty" requirement of the intentional act exception to the Workers' Compensation Act found in La. R.S. 23:1032.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and plaintiff's petition for damages is dismissed at his cost.
REVERSED.
*214 LEMMON, J., concurs and assigns reasons.
KIMBALL, J., concurs for reasons assigned by LEMMON, J.
JOHNSON, J., dissents and assigns reasons.
LEMMON, J., Concurring.
The evidence in this case established a callous disregard by the employer for the safety of its employee. This conduct constituted an extremely high degree of negligence, but did not rise to the level of an intentional act.
I reserve for future cases, however, a decision on whether the "substantial certainty," necessary for an intentional act within the contemplation of La.Rev.Stat. 23:1032, requires a subjective intent by the employer to injure this particular employee at this particular time by this particular injury-causing act or omission.
JOHNSON, Justice, dissenting.
In the instant case, the majority has reversed findings of fact that were made by the trial court and affirmed by the court of appeal. The evidence presented to the jury proved conclusively that Structural Preservation Systems (hereinafter "SPS") knew that moving the pot manually was substantially certain to cause injury. First, the pot had a warning sticker stating that the pot should not be moved manually. The Occupational Health and Safety Act (hereinafter "OSHA") required that this sticker be placed on the pot. Second, SPS knew that a forklift had been used to move this same pot on a previous job. When the pot arrived at the SPS job site, the pallet, which allowed the pot to be moved by forklift, was removed. Lastly, Plaintiff's supervisor informed SPS at a safety meeting that a tow motor would be needed to move the pot.
This court may not set aside a jury's finding of fact and substitute its own conclusions unless those findings are "manifestly erroneous" or "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). We may not reverse the jury's findings of fact in the absence of manifest error even though the we may be convinced that we would have reached a different result. Id. Therefore, our disagreement with the trial court is not sufficient to set aside the jury's findings. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Workers' compensation is an employee's exclusive remedy for work-related injuries unless the injuries resulted from an intentional act. In Bazley v. Tortorich, 397 So.2d 475 (La.1981), we stated that a person's act is intentional if (1) the person consciously desires the physical result of his act, what ever the likelihood of that result happening from his conduct, or (2) the person knows that injury is substantially certain to follow from his conduct, whatever his desire may be as to the result. The majority has held that the jury was manifestly erroneous in finding that SPS's conduct was intentional. They concluded that SPS's conduct does not meet the "substantial certainty" test. According to the majority, believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional tort, but instead falls within the range of negligent acts covered by workers' compensation. Specifically, the majority states that "There was simply no evidence presented that the accident was `substantially certain' to occur."
In Wainwright v. Moreno's Inc., 602 So.2d 734 (La.App. 3 Cir.1992), the Louisiana Third Circuit Court of Appeal held that an employer committed an intentional tort by ordering an employee to work in a ditch that he knew would cave-in and cause injury. The Third Circuit found that the employer knew with substantial certainty that injury would occur because (1) the ditch had caved-in on the previous day, See, Wainwright, 602 So.2d at 739, (2) a safety meeting was held where an engineer recommended that no one go into the ditch, See, Id., and (3) the ditch was constructed in violation of OSHA standards, See, Id. The facts in Wainwright *215 are very similar to the facts of this case. In both cases, the employers' practices violated OSHA standards and in both cases the employers were warned, at safety meetings, about the danger of their practices. The majority tries to distinguish the instant case from Wainwright because there was a previous accident in Wainwright. There was no previous accident in this case because a forklift was used to move the pot on previous jobs. Following the majority's logic, we should deny Reeves' recover, but allow recovery to any subsequent worker who is injured while manually moving the 1,200 pound pot. The majority has held that in order for an employer to be substantially certain that injury will occur, another employee must have been previously injured due to the improper workplace practices of the employer.
For the reasons stated above, I would affirm the two lower courts and hold SPS liable to Plaintiff for an intentional tort.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] It is unclear how much sand was in the pot at that time, although Reeves testified that they had filled the pot with 800 or 900 pounds of sand in the morning and had used some of that sand for sandblasting before the accident.
[2] Also see our opinion in Caudle v. Betts, 512 So.2d 389, 391 (La.1987), where we held that "when an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder." In Caudle, as a practical joke, the CEO shocked the back of the plaintiff's neck with an electric automobile condenser, and chased him around with it until he escaped by locking himself in an office. The plaintiff suffered injury to his occipital nerve. Because plaintiff had proved the elements of the intentional tort of battery, which requires only that the person engage in "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact," we held this to be an intentional act within the meaning of the intentional act exception, even though the CEO intended only to inflict offensive contact, not actual injury. See also White v. Monsanto Co., 585 So.2d 1205 (La.1991) (reversing a jury finding that the employer had committed the intentional tort of the intentional infliction of emotional distress and that the employee could therefore recover under the intentional act exception).
[3] The jury was instructed as follows:

Intent means that the actor either (1) consciously desires the physical result of his actions or (2) knows that the result is substantially certain to follow from his actions. A defendant who is guilty of an intentional tort is liable for all of the consequences of his actions, even those which he did not actually intend or which were not reasonably foreseeable.
"Substantially certain" means "virtually sure" or "really inevitable." An injury cannot be considered as intentionally caused merely because there exists a high probability of an injury occurring, but can only be considered as intentional where the occurrence of the injury is virtually sure or nearly inevitable.