776 So.2d 439 (2001)
Larry J. CARRIER and Patsy C. Carrier
v.
GREY WOLF DRILLING COMPANY, et al.
No. 2000-C-1335.
Supreme Court of Louisiana.
January 17, 2001.
Mark L. Riley, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for Applicant.
Miles A. Matt, J. Minos Simon, Lafayette, for Respondent.
PER CURIAM.
At issue in this case is whether an employer is entitled to summary judgment, on the ground that plaintiffs have failed to present any evidence that the employer committed an intentional act for purposes of the intentional act exclusion of the Workers' Compensation Act. For the reasons that follow, we conclude summary judgment in the employer's favor is appropriate.

FACTS AND PROCEDURAL HISTORY
Damon Carrier was employed by Grey Wolf Drilling Company ("Grey Wolf") and assigned to work as a floorhand on Grey *440 Wolf's Rig 18, an oil and gas rig situated outside Brenham, Texas. At the time of this assignment, Mr. Carrier, who was twenty-three years old and had no prior oilfield experience, had been employed by Grey Wolf for only three months.
On the day of the accident, Byron Beard, a Grey Wolf driller and Mr. Carrier's immediate supervisor, instructed Mr. Carrier to get two crescent wrenches in order that the drill crew could remove a 1,000 pound section of tubing, known as a standpipe, which was clamped to the derrick of Rig 18. Mr. Carrier had never before performed the task of removing a standpipe. Mr. Beard explained the procedure to Mr. Carrier, and specifically instructed him that the other employees would get a forklift to support the standpipe during the operation.
After Mr. Carrier retrieved the wrenches, he positioned himself beneath the derrick and began unbolting one of the three clamps holding the standpipe to the derrick. Mr. Beard was working on the forklift with his back turned to Mr. Carrier and thus did not see what he was doing; however, another floorhand, Dale Mayer, saw Mr. Carrier stooping down taking off the clamp. At this time, unbeknownst to Mr. Mayer, two of the clamps had already been removed, leaving only a single clamp to support the standpipe. Mr. Mayer told Mr. Carrier to "hold up a minute, we're going to put the forklift under it." Mr. Mayer then turned around to help Mr. Beard with the forklift. After Mr. Mayer completed his task, he walked back towards the standpipe and again told Mr. Carrier to wait for the forklift.[1] Less than five seconds later, Mr. Carrier made the final turn on the third clamp. Without the support of the forklift, the standpipe fell from the clamps, striking Mr. Carrier and killing him.[2]
Subsequently, Mr. Carrier's parents filed the instant tort suit against Grey Wolf and Mr. Beard.[3] Plaintiffs brought their claim pursuant to La. R.S. 23:1032(B), the intentional act exclusion of the Workers' Compensation Act,[4] contending that defendants knew or should have known that injury to Mr. Carrier was substantially certain to follow when they failed to stop him from removing the standpipe. Defendants subsequently filed a motion for summary judgment, arguing that plaintiffs could not prove an intentional tort, because they could not show defendants either consciously desired to bring about Mr. Carrier's death, or that his death was substantially certain to follow from their actions. In support, defendants relied on deposition testimony from Mr. Mayer and Mr. Beard, who both testified that Mr. Carrier had been instructed to wait for the forklift. Defendants argued that had Mr. Carrier followed these instructions, the accident would not have occurred. Plaintiffs produced no evidence disputing defendants' version of events, but argued that the "entirety of the circumstances" surrounding Mr. Carrier's death demonstrated that defendants were substantially certain of the harmful consequences of their conduct.
Following a hearing, the district court granted summary judgment in favor of *441 defendants and dismissed plaintiffs' suit. In its reasons for judgment, the district court found plaintiffs had produced no evidence that defendants desired to harm Mr. Carrier or that defendants knew that their conduct was substantially certain to cause injury to Mr. Carrier.
Plaintiffs appealed the district court's judgment, and the court of appeal reversed.[5] In an opinion not designated for publication, the court of appeal reasoned that summary judgment was inappropriate because a trier of fact could find that defendants were substantially certain of the consequences of removing the last clamp.
Upon defendants' application, we granted certiorari to review the correctness of that ruling.[6]

DISCUSSION
In order to recover in tort against Mr. Carrier's employer and co-employees under La. R.S. 23:1032(B), plaintiffs must prove that his death resulted from an "intentional act." We recently discussed the meaning of the phrase "intentional act" in Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, an intentional tort case arising in the context of a work-related accident. Citing Bazley v. Tortorich, 397 So.2d 475 (La. 1981), we concluded that an intentional act requires that the actor either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.
In the instant case, plaintiffs have not alleged that defendants consciously desired to kill Mr. Carrier. Rather, they allege that defendants' failure to properly train Mr. Carrier in removing the standpipe, combined with his youth and inexperience, made the accident substantially certain to occur.
In their motion for summary judgment, defendants disputed plaintiffs' allegation that Mr. Carrier's accident was substantially certain to occur. Pursuant to La.Code Civ.P. art. 966(C)(2), defendants' burden on the motion does not require them to negate all essential elements of plaintiffs' claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to plaintiffs' claim. Defendants satisfied this burden by submitting the deposition testimony of Mr. Carrier's co-employees, who indicated that the job being performed by Mr. Carrier could have been performed safely if Mr. Carrier had followed instructions to wait for the forklift to be placed under the standpipe prior to loosening the clamps.
Once defendants satisfied their burden, the burden shifted to plaintiffs to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial. La. Code Civ.P. art. 966(C)(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. Plaintiffs produced no factual support which would establish they will be able to satisfy their evidentiary burden at trial. Rather, they argue that even accepting defendants' version of events, the trier of fact could find that defendants were aware that injury would occur if the last clamp were removed, especially in light of prior similar accidents. However, as we explained in Reeves, believing that "someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent *442 acts that are covered by worker's compensation." 98-1795 at p. 9, 731 So.2d at 212.
Plaintiffs also rely on this court's opinion in Penalber v. Blount, 550 So.2d 577 (La. 1989), for the proposition that summary judgment is "rarely appropriate" in cases involving subjective facts such as intent. That case, which did not involve an intentional tort, was decided prior to the 1997 amendments to La.Code Civ.P. art. 966. Our statements in that case must be considered in the context of the new summary judgment law. If plaintiffs were able to demonstrate a factual dispute concerning defendants' intent, summary judgment would be inappropriate. However, under the facts of the instant case, the undisputed factual testimony demonstrates defendants did not intend to cause harm to Mr. Carrier, nor did they believe their actions were substantially certain to cause him harm. Because there are no genuine issues of material fact on this point, summary judgment in favor of defendants is clearly appropriate.
In sum, we find defendants met their burden of showing an absence of factual support for an essential element of plaintiffs' claim. Plaintiffs failed to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial. Accordingly, the district court properly granted summary judgment in favor of defendants. The judgment of the court of appeal must be reversed.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The district court's judgment granting summary judgment in favor of Grey Wolf Drilling Company, Byron Beard, and Old Republic Insurance Company and dismissing plaintiffs' suit with prejudice is reinstated. All costs in this court are assessed against plaintiffs.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting.
In the instant case, the majority relies on an earlier decision by this court in Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99) 731 So.2d 208, in which the majority held that the employer's conduct did not rise to the level of "substantial certainty" necessary for an intentional act under La.R.S. 23:1032(B), the intentional act exclusion of the Workers' Compensation Act. I dissented from the majority in Reeves, supra, and for the following reasons, dissent in the instant case.
On the date of the accident, Damon Carrier, (Mr. Carrirer) had been employed with Grey Wolf Drilling Co., for only three months and had no prior oilfield experience. Mr. Carrier was instructed by Byron Beard (Mr. Beard) to remove a 1,000-lb standpipe from the derrick of the Rig on which he was assigned. Mr. Beard testified that he informed Mr. Carrier that the other employees would get a forklift to support the 1,000-lb. standpipe. Mr. Carrier positioned himself directly beneath the derrick of the Rig and began unbolting the clamps which held the standpipe to the derrick. Upon removing the last bolt and without the support of the forklift, the standpipe fell and killed Mr. Carrier. Several experienced Grey Wolf employees, including Mr. Beard, stood watching only a few feet from Mr. Carrier and witnessed the accident. These Grey Wolf employees testified that they knew Mr. Carrier was removing the bolts but stated that they did not know when Mr. Carrier removed the last bolt.
Grey Wolf knew of Mr. Carrier's lack of experience and despite this knowledge, provided him with absolutely no training. Dale Mayer, one of the supervisors on this project, testified that he told Mr. Carrier to stop and wait for the forklift. However, Mr. Beard testified that Mr. Mayer was only four feet behind him and that he did not hear Mr. Mayer warning Mr. Carrier. Following the accident, OSHA cited Grey *443 Wolf for failing to provide adequate means of support for the standpipe. Two previous incidents were noted in the OSHA report where the standpipe had fallen, but no one was under the standpipe when it fell on those occasions.
Mr. Carrirer's parents (plaintiffs) filed the instant tort suit against Grey Wolf and Mr. Beard (defendants) pursuant to La. R.S. 23:1032(B), the intentional act exclusion of the Workers' Compensation Act, alleging that defendants knew with a substantial certainty that injury to Mr. Carrier would follow when they instructed him to remove the 1,000-lb. standpipe without the forklift support.
Workers' compensation is an employee's exclusive remedy for work-related injuries unless the injuries resulted from an intentional act. This court has stated in Bazley v. Tortorich, 397 So.2d 475 (La.1981), that the meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain or substantially certain to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Bazley, supra.
The majority finds that the defendant's conduct does not meet the "substantial certainty" test. Specifically, the majority states that "the defendants did not intend to cause harm to Mr. Carrier, nor did they believe their actions were substantially certain to cause him harm." I find it elementary that supervisors should know that when they instruct a worker to unbolt clamps, while positioned directly beneath an unsupported derrick, the machinery would fall on him, causing him death or injury. The Grey Wolf employees stood by in safety and watched Mr. Carrier, an inexperienced worker, work in an unsafe area and did nothing to remove him from the obviously dangerous situation. These five employees were careful to keep themselves out of harm's way, which leads me to conclude that they knew to a "substantial certainty" that they would be injured also if they placed themselves where they instructed Carrier to work.
Considering that (1) this standpipe had fallen on two prior occasions cited by OSHA, (2) several experienced Grey Wolf employees stood only a few feet away and watched Mr. Carrier as he unbolted the clamps, and (3) the employees knew that Mr. Carrier had no experience, training or instructions in this area, I find that a trier of fact could very well find that defendants were substantially certain of the consequences and summary judgment was inappropriate in this case.
I agree with the court of appeal's decision that summary judgment is not proper in this case and the matter should be remanded to the trial court for a trial on the merits.
NOTES
[1] Mr. Beard testified in a deposition that he was standing less than ten feet from Mr. Mayer but did not hear Mr. Mayer (or anyone else) say anything to Mr. Carrier. Mr. Mayer testified, however, that it's hard to hear in the oilfield because "it's pretty noisy around there."
[2] Following the accident, OSHA cited Grey Wolf for failing to provide an adequate means of support for the standpipe; Grey Wolf paid a $1,125 fine.
[3] Plaintiffs later amended their petition to add as a defendant Old Republic Insurance Company, Grey Wolf's liability insurer.
[4] La. R.S. 23:1032(B) provides:

Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[5] Carrier v. Grey Wolf Drilling Co., 99-1682 (La.App. 3d Cir.4/12/00), 771 So.2d 323 (not for publication).
[6] Carrier v. Grey Wolf Drilling Co., 00-1335 (La.6/23/00), 765 So.2d 345.