841 So.2d 987 (2003)
Roger NICKS,
v.
AX REINFORCEMENT COMPANY and Louisiana Workers' Compensation Corporation.
No. 02-CA-1116.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*988 Lloyd N. Frischhertz, Jr., William J. Levenson, New Orleans, LA, for Appellant.
David K. Johnson, Johnson, Stiltner & Rahman, Baton Rouge, LA, for Appellees.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
In this intentional tort suit, Plaintiff, Roger Nicks, appeals from a summary judgment granted in favor of Defendants, his employer, AX Reinforcement Company (AX), and its insurer, Louisiana Workers' Compensation Corporation. For the reasons which follow, we affirm.
On April 24, 1998, while working for AX, installing rebar for a cement canal wall, the Plaintiff fell from a height of about ten to twelve feet when the wall hook on his safety belt slipped off of the bar to which it was attached. AX was building a canal that was to have a cement bottom and walls. On the day of the injury, a four man crew was installing steel rebar along the walls of the canal. The walls of the canal were about ten feet high and almost vertical. The job required the workers to place 60 foot sections of steel rebar against the wall of the canal and to tie the rebar in place. In order to tie the rebar, the workers needed to climb the wall with the use of wall hooks which prevent the worker from falling. Plaintiff's foreman, Jerry Alley (Alley), provided him with the safety belt which he was using at the time of the accident. The safety belt's hook had been altered by wiring open the safety clasp. The hook dislodged from the bar and Plaintiff fell to the ground, sustaining injuries.
The Plaintiff filed suit on April 26, 1999, alleging that AX was liable to him for an intentional tort because he was made to work with a safety belt that had been intentionally altered to disengage the safety device on the wall hook. Plaintiff alleged in his petition that his foreman, Alley, had wired the safety clasp on the *989 wall hook open so that the employees could work faster.
Following discovery, AX filed a Motion for Summary Judgment. As part of its motion, AX attached parts of the depositions of Plaintiff, Cleveland Mealey (Mealey), a co-worker, and Alley. Alley specifically denied wiring open the safety clasp on the safety belt hook used by Plaintiff. Further, he stated that he told the workers about the safety clasp and told them to be careful with it. Although he owned his own safety belt and did not generally use the company belts, he stated that he would have switched belts with his employees had they requested it. Alley stated that the belt was not safe with the clasp wired open, but that they were used that way and he did not think that anyone would be injured. Plaintiff stated in his deposition that he had refused to use one particular altered belt in the past and that co-workers would switch with him. He further stated that he had a heated disagreement with Alley over the belts the day before. Nevertheless, on the day of the accident, he took the belt with the safety clasp wired open and put it on to do the job. He testified that he did not think that he would be injured as a result of using the belt with the safety clasp wired open. Mealey stated in his deposition that he did not hear Alley say anything about the safety belts being a problem. He also did not notice that the clasp was wired open on either safety belt. He simply picked up one and put it on. He stated that his safety belt was working normally that day. He also stated that he had seen safety belts with the clasp wired open. Sometimes it was done because they were broken and sometimes it was done so a worker could work faster by not having to disengage the safety clasp every time he moved.
Following argument on the Motion for Summary Judgment and submission of the exhibits, the trial court ruled in favor of AX finding:
I think that the employer knew that the safety belts were unsafe, they knew that whether they tied them back or whether they were just broken, they knew that they were requiring men to climb with safety belts that were not properly functioning, and they knew that the whole point of the safety belt is so that if you fall you might wrench your back but you certainly are not going to sustain horrible injuries, and knowing that they put the guys up on the wall.
The trial court granted the summary judgment, noting that although she did not favor the alteration or removal of safety devices on work equipment, the actions in this case did not rise to the level of an intentional tort as defined by the jurisprudence. It is from this summary judgment that Plaintiff appeals.
On appeal Plaintiff argues that the trial court erred in granting the summary judgment in favor of AX. Plaintiff's primary argument is that there are material issues of fact that preclude summary judgment. Plaintiff argues that there was disputed testimony as to whether Alley wired the clasp open. Further, the case turns on Alley's knowledge and intent, which are not proper subjects for summary judgment.
AX argues, to the contrary, that there are no issues of fact that are material to the resolution of the legal question presented herein. Injuries to workers are covered by workers' compensation except in extreme cases of intentional action by the employer or co-employees for which the employer is responsible. Neither of which is present here. Thus, the summary judgment, AX argues, was properly granted.
*990 The appellate standard of review for summary judgments is well settled. Our Supreme Court has recently summarized the law on summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
"In effect, the amendment `levels the playing field' between the parties in two ways: first, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed." Hardy v. Bowie, 98-2821, p. 5 (La.9/8/99), 744 So.2d 606 (citing Hayes v. Autin, 96-287 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41). "The amendment to Art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Proc. 56(c) ..." Id.

Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.
It is also well settled that claims for injury or death resulting from a workrelated accident are almost always recoverable only through workers' compensation. La. R.S. 23:1032 provides, in part:
(1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages....
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional tort.
Section B, the intentional act exclusion, has been judicially interpreted numerous times. Two recent Supreme Court cases, Carrier v. Grey Wolf Drilling Company, 00-1335 (La. 1/17/01), 776 So.2d 439 and Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, explain that the exclusion is narrow, and that the Louisiana legislature has rejected amendments to the section that would allow double compensation in cases where an employer violated a safety regulation, failed to provide a required safety device or, through a supervisor, acted with gross negligence.
In Reeves, the Supreme Court, citing language from Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981), stated that "the *991 words `intentional act' mean the same as `intentional tort' in reference to civil liability." The Supreme Court went on to quote from Bazley, stating:
We held that the meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."
The Supreme Court then explained "substantially certain" as follows:
Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation.
The "substantially certainty" element has been explained in this context as follows:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter takes the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only "intended" to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers' Compensation Law & Practice, § 365, p. 208.
"Substantially certain to follow requires more than a reasonable probability that an injury will occur and `certain' has been defined to mean `inevitable' or `incapable of failing.'" Jasmin v. HNV Cent. Riverfront Corp., 94-1497 (La. App. 4th Cir.8/30/94), 642 So.2d 311, writ denied, 94-2445 (La. 12/9/94), 647 So.2d 1110 at 312. "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the `substantial certainty' requirement." Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La. App. 4th Cir. 1993), writ denied, 629 So.2d 347 (La.1993). "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Id. (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4th Cir.1991)).
In the present case, viewing the facts most favorable to the Plaintiff, we find no factual issue material to the resolution of the legal issue here, that is, do the facts, as alleged and supported by the depositions, give rise to an action by Plaintiff, against his employer for intentional tort. We find, under the jurisprudence, that they do not.
As found by the trial judge, we accept that the employer supplied the safety belt to Plaintiff with the clasp on the wall hook wired open. We also accept Plaintiff's version that Alley did not warn him that the clasp was wired open. We note that Alley stated that disengagement of the *992 clasp by wiring it open was unsafe. Also, we accept Plaintiff's version that there was no showing that he could have repaired the clasp. However, there was testimony that it was not an uncommon practice to use safety belts with the hooks wired open. Further, there was no evidence of prior accidents occurring from this practice. Alley stated that he did not think that the Plaintiff would be injured by using the belt to do the work that day. Plaintiff himself stated that he did not think that he would be injured if he used the safety belt with the clasp tied open. While we agree that the disregard of employee safety can reach a level of gross negligence, it does not, under the current state of our jurisprudence, meet the "substantial certainty" requirement of the intentional act exception to the Workers' Compensation Act.
Accordingly, for the foregoing reasons, we affirm the ruling of the district court granting summary judgment in favor of AX and its insurer and dismissing Plaintiff's intentional tort suit against them, because Plaintiff's exclusive remedy against his employer is in workers' compensation.
AFFIRMED.