887 So.2d 599 (2004)
James BURROW and Kathleen Burrow
v.
DELTA CONTAINER and XYZ Insurance Company.
No. 04-CA-566.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*600 Frank A. Bruno, New Orleans, LA, for Plaintiff/Appellant.
Pierre M. Legrand, Ginger K. Deforest, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
The Plaintiffs, James and Kathleen Burrow, appeal from a summary judgment in favor of his employer, the Defendant, Delta Container, in an intentional tort suit. We affirm.
The depositions and affidavits attached to the summary judgment motion established that on September 13, 2001 James Burrow was employed by the Defendant constructing boxes. That morning, he and another employee, Linda Chatelain (Chatelain), set up a Revicart folder-gluer machine to run a small specialty box for a Tony Chachere product. On the initial run, they determined that a certain "flap" was not folding right. To resolve the problem, the plant supervisor, Craig Hartzheim (Hartzheim) instituted a work method of "hand positioning" the box as it passed from the gluer aerial belt system to the drying compression belt system so that the boxes would be straight before they came out of the machine. The machine had been installed for less than one year. At some point prior to that day, the safety devices on the doors had been disconnected to allow access to the machine interior to straighten boxes that were not coming out correctly. On the day of the accident, Hartzheim assigned the job of fixing the flaps to Virgil Barbarin (Barbarin), who had 20 years experience with moving machinery parts, but had not yet worked "inside" that machine. Hartzheim showed Barbarin how to place his hand in a space approximately 1-1 1/2 feet between the moving parts to flatten the box flaps. The Plaintiff was at the rear of the machine stacking the boxes at the time. Chatelain was the primary operator. The machine was running slow, one box approximately every 10 seconds. All of the workers knew that the safety devices had been overridden.
According to Barbarin, he did this for approximately one half hour, although the Plaintiff recollected that Barbarin performed this job for two hours, from 7:00 a.m. to 9:00 a.m. Barbarin testified that he was not afraid to work the machine. However, it was uncomfortable because he had to lean over to reach the boxes and it was also monotonous. He recollected that during the 9:00 a.m. break, the Plaintiff noted that he was not happy with his job and offered to switch jobs. The Plaintiff thought Barbarin asked to switch because he was so uncomfortable. Nevertheless, the two men swapped jobs without telling anyone. The Plaintiff performed Barbarin's job for approximately two hours before his right arm made contact with the aerial belt and was drawn into and around the roller, seriously injuring his wrist.
Hartzheim testified that he had performed the job in the past and had done so since the accident. On the day of the accident, the machine was run at its slowest setting. Hartzheim watched Barbarin for approximately ten minutes after showing him how to do the job. He was not aware that Barbarin and the Plaintiff had swapped places prior to the injury. Hartzheim stated that when he assigned Barbarin the task, he did not intend for anyone to be injured and did not believe that an injury was substantially certain to happen to either Barbarin or the Plaintiff.
Under the "Important Advice" section of the Revicart manual, Revicart states: "It *601 is severely forbidden to approach the machinery from its side during operation. Protection barriers have been installed on the machine for this reason." None of the employees recalled reading or seeing the warning. However, it was clear that the machine had problems with some boxes and that the safety devices remained off even after this accident. Hartzheim testified that he continues to employ the same technique, but now he is the only one that performs it.
On December 10, 2001, James Burrow filed a Disputed Claim for Compensation. On August 30, 2002, he and Kathleen Burrow filed a petition for Plaintiff's personal injury damages, asserting the intentional tort exclusion to the workers' compensation act. On January 10, 2003, the Defendant filed a motion for summary judgment, asserting that the exclusive remedy is under workers' compensation. A hearing on the motion was held on April 29, 2003. On May 1, 2003, the trial judge granted the motion.
On appeal, the Plaintiffs allege that the trial judge erred in failing to find disputed issues of fact regarding whether the Defendant intentionally injured James Burrow.
In support of the motion for summary judgment, the Defendant submitted the petition, excerpts from the depositions of James Burrow and Barbarin, the affidavit of Hartzheim and the Disputed Claim for Compensation. In their opposition to the motion, the Plaintiffs attached the depositions of Mark May, the Defendant's general safety manager, the depositions of Hartzheim, Barbarin, Chatelain, and Philip Arceneaux, the production manager, the affidavit and curriculum vitae of Michael Frenzel (Frenzel), an expert as a "Certified Safety Professional," and the inserts from the Revicart manual.
The Plaintiffs assert that James Burrow's injury was substantially certain to follow from the Defendant's willful and intentional disregard of the safety devices and from the work method devised by the Defendant that required him to place his hand among the moving parts of the machine. They point out that the machine was designed to shut down if the safety doors were opened and that it was against the manufacturers' recommendations to turn off the safety devices. They note that the practice of switching positions was permitted by the Defendant and that James Burrow and Barbarin were unaware that it was against OSHA regulations to allow an employee to work inside the machine. The Plaintiffs also refer to Frenzel's affidavit which asserts that the Defendant disregarded the public safety instructions in the manual and devised a procedure that required employees to place their hands in a danger zone. He notes that no other alternative methods were attempted to fix the problem. In his opinion, the accident was caused by the willful and intentional disregard and discard of critical safety devices. Given the conditions, he concluded that the accident was foreseeable and substantially certain to occur.
A summary judgment is reviewed by the appellate courts de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750; Garrison v. Tanenbaum, 02-1181, p. 4 (La.App. 5th Cir.4/8/03), 846 So.2d 40, 42. The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La.C.C.P. art. 966(A)(2); Garrison, 02-1181 at 4, 846 So.2d at 42.
The burden of proof is on the movant. However, if the movant will not bear the *602 burden of proof at trial on the matter that is before the trial court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Garrison, 02-1181 at 5, 846 So.2d at 43. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.; La. C.C. P. art. 966(C)(2). After the motion for summary judgment has been properly supported by the movant, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. Garrison, 02-1181 at 5, 846 So.2d at 43.
A claim by an employee against his employer for injury or death resulting from a work-related accident is almost always recoverable only through workers' compensation. La. R.S. 23:1032 provides, in part:
A.(1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages....
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional tort.
In Carrier v. Grey Wolf Drilling Company, 00-1335, p. 4 (La.1/17/01), 776 So.2d 439, 441 and Reeves v. Structural Preservation Systems, 98-1795, p. 5 (La.3/12/99), 731 So.2d 208, 210-211, the Louisiana Supreme Court explained that the exclusion is narrow, and that the Louisiana legislature has rejected amendments to the section that would allow double compensation in cases where an employer violated a safety regulation, failed to provide a required safety device or, through a supervisor, acted with gross negligence. See also: Nicks v. AX Reinforcement Co., 02-1116, p. 6 (La.App. 5th Cir.2/25/03), 841 So.2d 987, 990.
In Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981), the Court stated that "the words `intentional act' mean the same as `intentional tort' in reference to civil liability." In this context, "intent" is that the person who either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." Id.; Reeves, 98-1795 at 6, 731 So.2d at 211; Nicks, 02-1116 at 6; 841 at 991. The substantial certainty element is not satisfied simply because "someone may, or even probably will, eventually get hurt if a workplace practice is continued. That falls within the range of negligent acts that are covered by workers' compensation." Reeves, 98-1795 at 9, 731 So.2d at 212; Nicks, 02-1116 at 6, 841 So.2d at 991.
"`Substantially certain to follow' requires more than a reasonable probability that an injury will occur and `certain' has been defined to mean `inevitable' or `incapable of failing.' "Jasmin v. HNV Cent. Riverfront Corp., 94-1947, p. 2 (La.App. 4th Cir.8/30/94), 642 So.2d 311, 312; Reeves, 98-1795 at 9, 731 So.2d at 213; Nicks, 02-1116 at 7; 841 So.2d at 991. "[A]n employer's mere knowledge that a *603 machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the `substantial certainty' requirement." Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4th Cir.1993), writ denied, 629 So.2d 347 (La.1993); Reeves, 98-1795 at 10, 731 So.2d at 213; Nicks, 02-1116 at7, 841 So.2d at 991. "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Armstead, 618 So.2d at 1142 (citing Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807-808 (La.App. 4th Cir.1991)); Reeves, 98-1795 at 10, 731 So.2d at 213; Nicks, 02-1116 at 7, 841 So.2d at 991.
In this case, there are no facts presented that would support a finding of intent, within the meaning of the workers' compensation intentional act exclusion. The evidence was to the contrary. No one intended for James Burrow or anyone to be injured. The method, although unsafe, was used to correct a problem inherent in the machine. Furthermore, the accident was not "substantially certain" to follow within the meaning of the workers' compensation law. Hartzheim had performed the job in that manner since the machine had been installed without injury, as did Barbarin and Burrow for several hours. Even if we agree with plaintiffs argument that a high probability exists that someone would evidentially be hurt by the dismantling of a safety mechanism on the machine, such actions would, at the most, constitute reckless disregard for the safety of the employees. Reckless disregard constitutes gross negligence and does not satisfy in this case the very narrow criteria for asserting an intentional tort under the Workers Compensation Act. Thus, we find that the trial judge did not err in granting the summary judgment in favor of the defendant.
Accordingly, we hereby affirm the judgment. Costs of appeal are to be paid by the Plaintiffs.
AFFIRMED.