285 So.2d 574 (1973)
UNITED STATES FIDELITY & GUARANTY COMPANY
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.
No. 5387.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied December 10, 1973.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Breard Snellings, New Orleans, for plaintiff-appellant.
*575 Porteous, Toledano, Hainkel & Johnson, John J. Hainkel, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
This is a sequel to Cagle v. Playland Amusement, Inc., 202 So.2d 396 (La.App. 4th Cir. 1967) where the Court after finding the two insurers who are the parties to this suit liable to Cagle for his injuries concluded that "the question of the ultimate distribution of the liability among the defendants was not sufficiently raised in the pleadings . . . . but may be determined in future proceedings."
Subsequent to that decision's becoming final with the Supreme Court's denial of the application of Playland Amusement, Inc. and United States Fidelity & Guaranty Company for certiorari or a writ of review, 251 La. 403, 204 So.2d 578, the judgment in favor of Cagle was satisfied by the original defendants and this suit was originated by plaintiff to recover the amount it paid, being one-half of the total judgment or $11,372.62.
Plaintiff's legal position is that it was cast in judgment only in its capacity as insurer of Playland Amusement, Inc., which in turn was liable to plaintiff only in its capacity as employer vicariously liable for the tort of its employee, Jacomet, committed in the course and scope of his employment. Under such circumstances plaintiff has the legal right to recover from the employee what it paid to Cagle, or under the direct action statute from the employee's insurer, which is the defendant. It is the defendant's contention that plaintiff's insured, Playland, was independently negliget in either providing the weapon to its employee who was incompetent to handle the weapon or leaving the weapon where the employee, and others, could have easy access to it. Defendant also contends that Jacomet was an insured under plaintiff's policy so that plaintiff was liable to Cagle not simply on the theory of vicarious liability for the act of the employee but also as a direct insurer of the employee for his negligence.
The trial of the case consisted in the introduction into evidence of the entire record in the trial court as well as this Court of Cagle v. Playland Amusement, Inc., supra, and some additional testimony by Edward Jacomet which, for the most part, was repetitious of what was testified to at the previous trial. During the summer previous to the accident, which occurred in December, 1964, Jacomet had been employed as a security guard and at that time had a permit to carry a weapon and a commission as a special police officer without pay and he was then permitted to carry the pistol and bullets in a holster and belt. At the end of the summer job the permit and commission were cancelled, he was recalled for guard duty shortly before the time of the accident, and at that time was given instructions that he was not to carry the weapon but instead was provided with a billy club. His duties included the use of a time clock stored in a locker, a key to which he was furnished in connection with his duties. In the same locker was stored the weapon, as it had been during the previous summer, and on the night of the accident in violation of his instructions he entered the locker and put on the belt and holster containing the weapon. While Playland had never provided him with any instructions or training with respect to the use of the pistol, and although he did not own a pistol himself, Jacomet was 29 years of age and had been trained in the use of weapons including pistols while he was in the United States Navy for approximately eight years.
In dismissing plaintiff's suit the trial judge assigned written reasons as follows:
"3. Playlands, Inc., was individually negligent in making the gun available to Jacomet and therefore cannot seek to hold Southern Farm primarily and wholly liable . . . . .

*576 "Playlands, Inc., while instructing Jacomet not to wear the gun as it appears they did, nevertheless took no further steps to remove the gun and as a matter of fact, Playlands left the gun in the guard's locker room where Jacomet had free access to it at any time.
"Playlands, Inc. was negligent in so leaving this dangerous weapon where not only Jacomet but others could have easy access to it and therefore Playlands was independently negligent and the language quoted above of the U.S.F. & G. policy affords coverage under that policy and accordingly U.S.F. & G. was and is individually liable for 50% of the original judgment as originally cast by the jury."
We have concluded that this holding by the trial judge constitutes error and requires the reversal of his decision.
Having found for a fact that Playland instructed Jacomet not to use the gun the trial judge found that it was actionable negligence for Playland under the circumstances to keep the gun in the place where it was kept. The weapon in question was stored under lock and key in a place to which only Jacomet, and presumably other security personnel had access. Jacomet had had a satisfactory record of employment with Playland, he had been previously granted a permit to carry the weapon and had done so satisfactorily in the performance of his duties, and while he was not then in possession of a valid permit this fact was in no way related to or affected by a lack of sufficient competence on his part to obtain such a permit. Furthermore, Jacomet was a mature individual who in fact was experienced in the use of fire arms, and for us to hold that under these circumstances it was negligent for Playland to store the weapon in a place where Jacomet had access to it would be almost tantamount to holding that the ownership of a weapon constitutes negligence.
Defendant makes much over the fact that Playland provided no instructions or training to Jacomet in the use of the weapon, but these matters become wholly irrelevant to the issue under the circumstances where Jacomet was not provided with the weapon for his use and to the contrary was instructed not to use it, and since, under the facts of the case, the accident did not arise out of the use of the weapon as such but in the misuse of the weapon as a club to break the glass window of an automobile while Jacomet was in close proximity to the injured plaintiff Cagle.
Defendant's second contention that the evidence shows that Jacomet was given the use of the weapon and that Playland's negligence consisted in its failure to instruct or train Jacomet in its use is not supported by the record. A reference to the previous case of Cagle v. Playland Amusement, Inc., supra, shows that Jacomet contradicted himself on the witness stand as to whether he was instructed not to use the weapon, but at the trial of the instant case he testified that he was instructed not to use the weapon, the trial judge found this to be such, and there is no basis for our disturbing the trial judge's finding in this connection.
Finally, defendant's contention that plaintiff insured Jacomet individually under the terms of its policy has no merit. In support of its contention defendant relies on the following definition of "insured" in the policy:
"With respect to the insurance under Coverages A, B and D the unqualified word `Insured' includes the named insured and also includes any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the Named Insured. If the Named Insured is a partnership, the unqualified word `Insured' also includes any partner therein but only with respect to his liability as such."
We do not find that Jacomet was employed by Playland "with respect to real *577 estate management" in his limited capacity as a security guard and consequently Jacomet does not qualify as an insured under the quoted provisions of the policy.
Accordingly, the judgment appealed from is reversed and there is judgment in favor of United States Fidelity & Guaranty Company and against Southern Farm Bureau Casualty Insurance Company in the sum of $11,372.62 with interest and costs including costs of this appeal.
Reversed and rendered.