602 So.2d 734 (1992)
Robert N. WAINWRIGHT, Plaintiff-Appellee,
v.
MORENO'S, INC. and Transportation Insurance Company, Defendants-Appellants.
No. 90-1271.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*736 Broussard, Bolton, Halcomb & Vizzier, Roy S. Halcomb, Jr., Alexandria, for plaintiff/appellee.
Provosty, Sadler & deLaunay, Wm. H. deLaunay, Alexandria, for defendant/appellant Transp. Ins. Co.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Edward J. Fonti, Lake Charles, for defendant/appellant Moreno's.
Robert L. Kennedy, Colfax, for defendant/appellant Clerk's Office.
Before YELVERTON and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
BERNARD N. MARCANTEL, Judge Pro Tem.
The issues presented by this appeal concern the intentional tort exception to the worker's compensation law; orders for a jury trial; coverage under insurance policies; expert testimony; amendment of the pleadings; court costs; per-page costs of the appeal; attorney's fees awarded to the Clerk of Court; and interest on the judgment.
On July 21, 1987, Robert N. Wainwright (hereinafter plaintiff) filed a petition for worker's compensation benefits against his employer, Moreno's, Inc. (hereinafter Moreno's), and Transportation Insurance Company *737 (hereinafter TICO). Plaintiff later amended his petition to name Jerry Broussard (hereinafter Broussard) as an additional defendant and to allege an intentional act on the part of defendants. Moreno's and Broussard answered and denied the allegations, and filed a third party petition against TICO and Continental Casualty Company (hereinafter Continental). TICO, Moreno's, Broussard and plaintiff filed motions for summary judgment. Moreno's and Broussard also filed a cross motion for summary judgment against TICO. The trial court denied defendants' motions for summary judgment and granted plaintiff's motion for summary judgment finding that there was coverage under the insurance policy issued by TICO for both Moreno's and Broussard. A trial was held on October 17 and 18, 1989, on the issues of the intentional tort claim and coverage under TICO's and Continental's insurance policies. The trial judge found in favor of plaintiff and against defendants, Moreno's, Broussard, TICO and Continental. Defendants appeal. We affirm.

FACTS
Plaintiff's employer, Moreno's, subcontracted with Westerchil Construction (hereinafter Westerchil), a general contractor, to install chill water piping on a job in which Westerchil had contracted to construct a new 120 bed nursing home unit at the Veteran's Administration Hospital in Alexandria, Louisiana. On November 19, 1986, plaintiff was working at this jobsite in a ditch that was approximately ten feet deep and four to six feet wide, when the ditch caved in on him and a co-worker, Kenneth Gray (hereinafter Gray). As a result of this accident, plaintiff sustained serious injuries to his left leg.
Plaintiff filed a petition for worker's compensation benefits against Moreno's and TICO, the insurer of Moreno's. Plaintiff later amended his petition to add an additional defendant, Broussard, a foreman for Moreno's, and to allege that Broussard and Moreno's were guilty of an intentional tort because Broussard ordered plaintiff to remain in the ditch and to continue working when Broussard had been warned that the ditch was likely to cave in. Moreno's and Broussard answered the petition and denied the allegations and filed a third-party petition against TICO, Moreno's insurer, and Continental, Moreno's umbrella policy insurer. TICO and Continental answered the third-party petition claiming that there was no coverage under the insurance policies for this accident.
TICO, Moreno's, Broussard and plaintiff filed motions for summary judgment. Moreno's and Broussard also filed a cross motion for summary judgment against TICO. The trial court denied defendants' motions for summary judgment and granted plaintiff's motion for summary judgment finding that there was coverage under the insurance policy issued by TICO for both Moreno's and Broussard.
A trial was held November 17 and 18, 1989 on the issues of the intentional tort claim and coverage under TICO's and Continental's insurance policies. The trial judge found in favor of plaintiff and against defendants, Moreno's, Broussard, TICO and Continental. Defendants appeal. Defendants, TICO and Continental, assign the following errors:
(1) The trial court erred in finding Moreno's or Broussard liable under the intentional tort exception to the worker's compensation law; and, if not,
(2) The trial court erred in vacating the previous orders for a jury trial;
(3) The trial court erred in finding Moreno's and Broussard are entitled to coverage and attorney's fees and costs under any policy issued by TICO and Continental;
(4) The trial court erred in admitting expert testimony;
(5) The trial court erred in refusing to allow an amendment of the pleadings;
(6) The trial court erred in awarding costs;
(7) The trial court erred in not reducing the per-page costs of the appeal and in awarding attorney's fees to the clerk of court; and
*738 (8) The trial court erred in setting the time from which interest on the judgment should run.
Defendants, Moreno's and Broussard, adopt the assignments of error alleged by TICO and Continental, except for those assignments of error dealing with coverage under the insurance policies, since they agree with the trial court's decision in finding that there was coverage under the insurance policies issued by TICO and Continental; the vacating of the jury trial by the trial judge, since they did not request a jury trial; and, the amendment of the pleadings.

INTENTIONAL TORT
Defendants claim that the trial court erred as a matter of law in finding the actions of both Moreno's and Broussard constituted intentional acts within the meaning of La.R.S. 23:1032, entitling plaintiff to bring an action in tort against his employer.
The Louisiana Supreme Court, in the case of Bazley v. Tortorich, 397 So.2d 475, at page 482 (La.1981), discussed the meaning of the term "intentional tort," as it was applied in La.R.S. 23:1032:
"For these reasons, we construe the legislation under review as providing that the exclusive remedy rule shall be inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App.1980); McGuire v. Honeycutt, 387 So.2d 674 (La.App. 3d Cir.1980); Johnson v. Chicago Mill & Lumber Co., 385 So.2d 878 (La.App. 2d Cir.1980); Courtney v. BASF Wyandotte Corp., 385 So.2d 391 (La.App. 1st Cir.) writ denied 386 So.2d 359 (La.1980); Bourgoyne v. City of Baton Rouge, 380 So.2d 131 (La.App. 1st Cir.1979), cert. denied 382 So.2d 164 (1980); Frazier v. Woodward, 378 So.2d 209 (La.App. 4th Cir.1979); Johnson v. Narcisse, 373 So.2d 207 (La.App. 4th Cir. 1979); Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1st Cir.1979); Guidry v. Aetna Casualty & Surety Company, 359 So.2d 637 (La.App. 1st Cir.), writ denied, 362 So.2d 578 (La.1978). Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, § 8A, Comment; Prosser, supra, § 8."
In his written reasons for judgment, the trial judge stated "... this court concludes that Moreno's, Inc., knew that the injuries to the plaintiff were substantially certain to result from their actions." The trial judge continued and discussed the facts upon which he based his finding that Moreno's knew that the injuries to plaintiff were substantially certain to result from its action.
In Rosell v. ESCO, 549 So.2d 840, at page 844 (La.1989), writ den., 561 So.2d 105 (La.1990), the Louisiana Supreme Court has enunciated the following general principles that govern an appellate court's power to reverse a trial court's factual finding:
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."
After a review of the record in this case in its entirety, we conclude that the trial court was not clearly wrong in its finding that Broussard knew when he ordered plaintiff back into the ditch that the ditch was substantially certain to cave in on plaintiff.
*739 Testimony showed that a cave-in had occurred on the day before the accident and, as a result of this cave-in, Tony Leblanc (hereinafter Leblanc), a superintendent for Moreno's, had held a safety meeting the next day, which was the morning of plaintiff's accident. At this meeting Leblanc told the men not to get into a ditch unless they could see out of it.
The Occupational Safety and Health Act requires that the sides of a ditch in unstable or soft material, which sides are more than five feet in depth, shall be shored, sheeted, braced, sloped, or otherwise supported. The ditch which caved in was about ten feet deep at the time of the accident.
Although the contract Moreno's had with Westerchil did not include shoring, there was an understanding that, if shoring became necessary, Moreno's could amend its proposal to include shoring.
Jimmy Schiller (hereinafter Schiller), the senior resident engineer for the Veteran's Administration, testified that, on the day before the accident in this case, he had told L.J. Edwards, one of Moreno's foremen, that the soil was sloughing off the sides of the ditch and that no one should be allowed in the ditch without protection. He also testified that he told Leblanc that the dirt in which they were digging was unstable and no one should be allowed in the ditch until they protected the ditch against a cave-in. Schiller explained that Westerchil had complained about Moreno's running behind schedule so Broussard was brought in to speed up the work.
Leblanc testified that, on the morning of the accident, he had told plaintiff and Gray to get out of the area where the accident had occurred and to go back where the ditch was cut at a 45 degree angle. He also considered the soil unstable. He stated that he intended to shore the area where the accident occurred. Leblanc admitted that Broussard was brought in to speed up the job.
Broussard testified that Leblanc had told him that there had been sloughing off in the area where the accident occurred.
Both plaintiff and Gray testified that David Pritchard, a backhoe operator helping with Moreno's trenching work, shut off his backhoe, pointed out a crack to them and told them to get out of the ditch because it appeared the ditch was going to cave in. When Pritchard made this statement, Broussard was on the other end of the pipe on which plaintiff and Gray were working.
We find that Broussard had sufficient knowledge that a cave-in was substantially certain to occur from the other facts such as the unstable soil and the depth of the ditch prior to the crack appearing in the ditch. Therefore, the accident was already underway when the crack appeared.
After a review of this trial testimony, we find that it was reasonable for the trial judge to conclude that, when Broussard ordered plaintiff back into the ditch, Broussard knew that a cave-in was substantially certain to follow and harm plaintiff.

JURY TRIAL
TICO and Continental claim that the judgment should be reversed on the ground that they were improperly denied their right to a jury trial.
Defendants sought supervisory writs to this court and the Supreme Court on this issue. This court and the Supreme Court denied defendants' application for writs. Therefore, this ruling is now the "law of the case." Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (La.1971).

INSURANCE COVERAGE
TICO and Continental claim that the trial judge erred in finding that there was coverage under the insurance policies issued by them to Moreno's.
TICO issued two policies to Moreno's, a worker's compensation and employer's liability insurance policy (hereinafter WC/EL policy) and a comprehensive general liability insurance policy (hereinafter CGL policy). Continental issued an umbrella policy for excess liability over the underlying coverage.
*740 An exclusion in the CGL policy reads as follows:
"j. to Bodily Injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the Insured under an Incidental Contract."
Since plaintiff was injured while in the course and scope of his employment, we find that the CGL policy did not provide coverage in the present case.
TICO and Continental claim that coverage is also not provided under the WC/EL policy because of the following exclusions:
"C. Exclusions
This insurance does not cover:
* * * * * *
4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
5. bodily injury intentionally caused or aggravated by you;"
Since this is an intentional tort, which is an obligation not imposed by worker's compensation law, exclusion number 4 of the WC/EL policy does not exclude coverage. We also find that exclusion number 5 does not exclude coverage in the present case for the following reasons.
An "insured" under the policy is defined as follows:
"B. Who Is Insured
You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees."
The policy lists the insured as Moreno's, Inc. and Calcasieu Mechanical, Inc.
This same issue was discussed in the case of Lowe & Sons v. Great American Surplus, 572 So.2d 206 (La.App. 1st Cir. 1990). In that case, the employer's liability policy had an exclusion for "bodily injury intentionally caused or aggravated by you." The court discussed this exclusion at pages 209, 210 as follows:
"It is well-settled that `you' as defined in the present case does not include employees of Lowe (the corporation) which is the named insured. Bryant v. Protective Casualty Insurance Company, 554 So.2d 177 (La.App. 2nd Cir.1989), writ denied, 558 So.2d 1129 (La.1990); Rodriguez v. Continental Casualty Company, 551 So.2d 45 (La.App. 1st Cir.1989); Pierron v. Lirette, 468 So.2d 1305 (La. App. 1st Cir.1985); Morris v. Mitchell, 451 So.2d 192 (La.App. 1st Cir.1984); United States Fidelity & Guaranty Company v. Southern Farm Bureau Casualty Insurance Company, 285 So.2d 574 (La.App. 4th Cir.1973). Thus, Michael Jenkins, as an employee of Lowe, is not an insured under the Hartford policy. Lowe is the only insured under the policy.
It is clear from a reading of exclusion number five that the Hartford policy excludes coverage for Lowe's alleged intentional tort under the facts recited in the Marshalls' original petition. In this instance, the bodily injury was alleged to have been intentionally caused or aggravated by Lowe (you)."
The exclusion found in the WC/EL policy would not exclude coverage for bodily injury intentionally caused by Broussard, an employee of Moreno's.
An employer is vicariously liable under general tort law for the injury-causing acts of an employee, whether the acts are negligent or intentional. An employer is likewise vicariously liable for the intentional acts of an employee causing injury to a co-employee. Jones v. Thomas, 426 So.2d 609 (La.1983), appeal after remand, 557 So.2d 1015 (La.App. 4th Cir.1990). Thus, Moreno's may be held vicariously liable for the intentional acts of Broussard. Therefore, there is coverage under the WC/EL policy in the present case since coverage is not excluded for the intentional acts of employees.
*741 Since we have found that there is coverage under the WC/EL policy, there would also be coverage under the umbrella policy issued by Continental, which provides coverage when there is coverage under the underlying insurance, of which the policy limits have been exhausted.

ATTORNEY'S FEES AND COSTS
TICO and Continental claim that the trial court erred in the amount of the award for attorney's fees and litigation costs.
If an insurer breaches its obligation to defend its insured, it is liable in damages for the attorney's fees and costs the insured incurs in defending the suit if the pleadings against the insured disclose a possibility of liability under the policy. Lowe & Sons, supra.
Since we find no ambiguity in coverage, TICO and Continental had an obligation to defend Moreno's and Broussard and are therefore liable for attorney's fees and costs. We also find that the amount of attorney's fees and costs are reasonable.

EXPERT TESTIMONY
Plaintiff called C.E. Jackson and qualified him as an expert in civil engineering, construction and construction safety. Counsel for plaintiff asked Jackson whether or not a cave-in was substantially certain to happen at the point when Broussard ordered plaintiff and Gray to get back in the ditch. Counsel for defendants objected because the question called for a conclusion on the part of the witness for which he was not qualified to answer and because the issue of "substantially certain to happen" was the ultimate issue before the court.
There was no objection to Jackson's qualifications as an expert in civil engineering, construction and construction safety. Experts may give an opinion, but they must state facts on which opinions are based. Dixie Pipeline Company v. Barry, 227 So.2d 1 (La.App. 3 Cir.1969), writ ref., 229 So.2d 731 (La.1970). Jackson testified extensively on the facts on which he relied to determine whether or not a cave-in was substantially certain to happen. Therefore, we find that Jackson's testimony was proper.
We also find that Jackson did not give an opinion on the ultimate issue of this case. The ultimate issue in this case was whether Broussard had knowledge that a cave-in was substantially certain to occur, not the certainty of the cave-in itself.

AMENDMENT OF PLEADINGS
At the close of trial, TICO sought to file a second supplemental answer. The trial judge denied this filing and, in written reasons for judgment, stated that a filing of pleadings at this time would not satisfy the reasonable notice requirement of La. C.C.P. art. 1155.
TICO claims the trial court erred in failing to allow the supplemental pleadings. By this supplemental answer, TICO was seeking a credit for all worker's compensation benefits paid to or on behalf of plaintiff against any judgment rendered in favor of plaintiff.
La.C.C.P. art. 1155 states:
"The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exigible since the date of filing the original petition or answer, and which are related to or connected with the causes of action or defenses asserted therein."
We find that TICO was attempting to assert an affirmative defense of offset for worker's compensation benefits paid. This was a defense that existed when TICO filed an answer to plaintiff's supplemental and amending petition. Since this defense has not become exigible since the date of the filing of the amending petition, we find that the trial judge was correct in refusing to allow this pleading to be filed at the close of the trial as reasonable notice had not been given.

COSTS
Defendants claim the trial court erred when it taxed as costs expert witness *742 fees, deposition costs and the cost of medical records. Defendants claim that there was no evidence introduced of the costs awarded. A review of the record shows that evidence was offered at trial as to the costs of the depositions and medical records.
La.R.S. 13:3666 states that the fees of expert witnesses are to be taxed as costs to be paid by the party cast in judgment. La.R.S. 13:3663 provides that deposition fees shall be considered as costs of court. The trial judge was correct in taxing as costs the deposition fees and expert witness fees.
La.R.S. 13:3666(C) also provides that the court shall tax as costs the reasonable and necessary cost of medical reports and copies of hospital records. For this reason, we find that the trial judge was correct in taxing as costs the costs of the medical records.

INTEREST
Defendants claim that the trial court erred in awarding interest on the date the original petition was filed for worker's compensation benefits rather than from the date the amending petition was filed asserting the tort claim.
La.R.S. 13:4203 provides that legal interest shall attach from date of judicial demand on all judgments sounding in damages ex delicto.
La.C.C.P. art. 1153 provides when an amendment relates back as follows:
"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."
Since this tort claim arose out of the same accident as the claim for worker's compensation, we find that the amendment relates back to the date of the filing of the original petition and interest should attach from the date of the filing of the original petition.

REDUCTION OF PER-PAGE COST OF APPEAL
TICO and Continental filed a motion for appeal on March 16, 1990, and received notice from J. EIRay Lemoine, the Clerk of Court of the Thirty-fifth Judicial District Court, advising that the estimated costs of appeal would be $6,831.50. TICO and Continental filed an application to reduce costs pursuant to La.C.C.P. art. 2126. Subsequently, Moreno's and Broussard, who filed an appeal on March 26, 1990, joined in this application.
The hearing on the application to reduce costs was held on April 30, 1990. The trial court allowed a designation of the record and denied the application to reduce costs, but allowed the copies of the transcript of the trial testimony to be prepared by the court reporter at the statutory rate. A formal written judgment was signed on May 3, 1990.
Defendants claim that costs charged by the clerk of court to prepare the record for appeal were excessive.
La.R.S. 13:841 designates the fees the clerks of court can demand and receive. This court finds that La.R.S. 13:841(5) is applicable to this case and reads as follows:
"A. The clerks of the several district courts shall be entitled to demand and receive the following fees of office and no more in civil matters:
* * * * * *
(5) For copying all instruments of writing or pleadings not otherwise provided for, each one hundred words including seal and certificate thereto, two dollars."
Evidence in the record revealed that there were at least 162 words per page. Therefore, we find that it was proper for the clerk of court to charge $3.00 per page.

ATTORNEY'S FEES
Defendants claim that the trial court erred in awarding attorney's fees to the clerk of court on the motion for reduction.
Attorney's fees are not allowed except where authorized by statute or contract. *743 Huddleston v. Bossier Bank and Trust Co., 475 So.2d 1082 (La.1985); Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985).
La.R.S. 13:843 sets forth the instances in which the attorney's fees of an attorney employed by a clerk of court may be awarded and provides:
"A. The clerk of court may demand security for costs at the time the suit is filed.
B. (1) After any cost advance furnished under R.S. 13:842 has been exhausted, all accrued costs shall be paid by the party incurring the additional costs or by the surety on any bond for costs furnished by him, upon receipt of the clerk's demand for payment thereof supported by an itemized account of these accrued costs.
(2) If these accrued costs are not paid within ten days of the demand for payment, judgment therefor may be rendered against the party and against the surety on any cost bond furnished by him, by rule returnable not less than two judicial days from the date of service upon the defendants in rule.
(3) The clerk may employ an attorney at law to assist him in filing and trying said rule or rules, and the fee of the attorney employed for that purpose shall be fixed by the district judge before whom the rule is tried and shall be taxed as costs along with the cost of hearing the rule."
This statute is broad enough to allow the clerk of court to collect attorney's fees in this case, which was a hearing on the costs charged by the clerk of court to file the appeal. The clerk of court had to engage an attorney to assist in filing and trying the motion to reduce costs.
The clerk of court also filed an answer to the appeal asking that the amount of attorney's fees be increased. The trial court has much discretion in determining the reasonableness of attorney's fees. Sharbono v. H & S Construction Co., 478 So.2d 779 (La.App. 3 Cir.1985). The trial court award of $400.00 for attorney's fees for the hearing of a motion to reduce costs was reasonable and, therefore, this ruling will not be disturbed.
For the reasons assigned, the judgment of the trial court awarding plaintiff damages in tort against Moreno's, Broussard, TICO and Continental with interest from the date of the original petition filed by plaintiff is affirmed, as is the judgment denying the application to reduce the per-page costs of the appeal and the award of attorney's fees to the clerk of court.
Costs of the appeal are assessed against defendants-appellants, Transportation Insurance Company, Continental Casualty Company, Moreno's, Inc. and Jerry Broussard.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.