**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-30985
Summary Calendar

ROLAND A ROMERO; SANDY ROMERO,

Plaintiffs-Appellants,

VERSUS

NORTHROP GRUMMAN CORP.,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana
(99-CV-624)

June 13, 2002

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Roland A. Romero and his wife, Sandy Romero, appeal the district court's ruling in favor of the Northrop Grumman Corporation (hereinafter "Northrop") dismissing the Romeros' claim for intentional injury, and the derivative claim for loss of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

consortium. The Romeros contend that the district court erred in finding that Mr. Romero's unprotected exposure to hazardous chemicals did not render injury substantially certain to occur. The Romeros further contend that in applying the substantial certainty test, the district court erred in requiring them to show that Northrop knew that an injury would, in fact, occur. For the reasons that follow, we disagree. We therefore affirm the judgment of the district court.

## BACKGROUND

In 1992, Northrop began operating an aircraft maintenance facility in Lake Charles, Louisiana. Mr. Romero, a seasoned mechanic with a long history of working in heavy industry, began working at Northrop's Lake Charles facility in November 1997, as an aircraft mechanic, and continued his employment there through March 25, 1998. On March 26, 1998, Mr. Romero reported to the hospital with complaints of dizziness and nausea. In April 1998, Mr, Romero applied for disability and medical benefits under Northrop's disability and healthcare programs, and received a total of $5,194.74 plus medical expenses. In January 1999, Mr. Romero filed a workers compensation suit in Louisiana state court, and subsequently received a judgment awarding him workers' compensation benefits. In March 1999, the Romeros filed suit in Louisiana state court alleging an intentional tort outside the scope of Louisiana's workers' compensation laws; specifically, that Northrop required Mr. Romero to work with dangerous chemicals, and failed to provide safety training prior to his exposure to the chemicals.

Based upon diversity of citizenship, Northrop removed the suit to federal district court, and moved for dismissal pursuant to Rule 12(b)(6), failure to state a claim upon which relief can be granted. The district court denied Northrop's motion upon a

finding that the allegations in the Romeros' complaint satisfied the substantial certainty test set forth in *Bazley v. Tortorich*, 397 So.2d 475 (La. 1981), and were sufficient to defeat a motion under Rule 12. Following the denial of its Rule 12 motion, Northrop filed a motion for summary judgment. The district court granted summary judgment in favor of Northrop upon the findings that: (1) the Romeros failed to present any "evidence that [Mr.] Romero's supervisors required him to work with the various chemicals knowing that he would inevitably become ill;" and (2) the Romeros' affidavits did not "establish that Northrop knew that illness was substantially certain to follow working with the chemicals used in their facility". The Romeros now challenge the district court's ruling.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Evans v. City of Houston*, 246 F.3d 344, 347 (5th Cir. 2001). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986).

## ANALYSIS

The Romeros assert that the district court erred in granting summary judgment on their intentional tort claim in favor of Northrop. In support of this assertion, the Romeros contend that

-3-

summary judgment was inappropriate because the evidence established that a genuine issue of material fact existed as to whether Northrop knew that Mr. Romero was substantially certain to become ill as a result of continued exposure to hazardous substances at the Lake Charles facility. The Romeros further contend that the district court improperly applied the substantial certainty test in that the district court erroneously raised the Romeros' burden of proof to require a showing that Northrop knew that an injury would, in fact, occur.

"In a diversity case state law provides the elements of the plaintiff's case." *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1356 (5th Cir. 1993) (citation omitted). Under Louisiana law, workers' compensation provides the exclusive remedy against an employer, or any officer, director, stockholder, partner or employee of such employer or principal when an employee suffers a work-related injury unless the injury results from an intentional act. LA. REV. STAT. ANN. § 23:1032A(1)(a) and 1032B (West 1998). The Louisiana Supreme Court instructs that the word intent means "that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley*, 397 So.2d at 481. Thus, "[o]nly where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional." *Id.*

The Romeros do not contend that Northrop desired to cause any illness to Mr. Romero, but rather they argue that Northrop knew,

-4-

with substantial certainty, that Mr. Romero's continued unprotected exposure to hazardous substances used in the Lake Charles facility would result in illness. In support of this argument, the Romeros maintain that prior to Mr. Romero's November 1997 employment date, Northrop was aware of the hazards associated with the chemicals used by aircraft mechanics at the Lake Charles facility but failed to provide safety training, protective safety equipment, and a safe working environment.

Specifically, the Romeros assert that the adverse health effects of the chemicals used at the Lake Charles facility were outlined in the material data safety sheets provided by the chemical manufacturers, and retained in Northrop's library. Mr. Romero testified that on one occasion he removed his head from a wing tip to get some fresh air, and his supervisor commented something to the effect of "you better watch that stuff, it will get you." Mr. Romero testified that on another occasion his supervisor ordered him to continue working without a respirator despite having been told by a Northrop safety monitor that Mr. Romero was not properly certified to perform the specific job task because he was not respirator certified. The Romeros also presented affidavits from former Northrop employees alleging that hazardous chemicals were improperly used at the Lake Charles facility, Northrop's safety procedures were routinely violated, and that Northrop's supervisors and managers were informed of the improper handling, safety violations, and health risks associated therewith. Accordingly, the Romeros contend that this evidence created a genuine issue of material fact as to whether Northrop was substantially certain that illness would result from unprotected over-exposure to the hazardous chemicals used by the aircraft

mechanics at the Lake Charles facility, and thus renders summary judgment inappropriate.

Northrop, however, argues that the Romeros failed to carry their burden of showing that Northrop was substantially certain that Mr. Romero would become ill from performing his work functions in the working environment at the Lake Charles facility. To the contrary, Northrop contends that the evidence shows that it was substantially certain that the working environment at the Lake Charles facility would not cause any disabling illness to Mr. Romero.

Northrop presented its Occupational Safety & Health Administration (hereinafter "OSHA") annual reports from the date the Lake Charles facility opened in 1992 through October 17, 2000, showing that of the 743 reported incidents during that time period, Mr. Romero was the only employee to report an illness from chemical exposure. Northrop presented affidavits from Mr. Romero's supervisors stating that they had personally worked in the same environment in which they asked Mr. Romero to work, under the same conditions without any respirator protection, and for much longer periods of time. The affidavits also stated that hundreds of other employees had worked in the same conditions, and that neither Mr. Romero nor any other employee had ever complained of any ill effects from exposure to chemicals used in the Lake Charles facility prior to Mr. Romero reporting to the hospital on March 26, 1998, with complaints of dizziness and nausea. Finally, Northrop concedes that the Romeros' evidence may show negligence but argues that it falls far short of showing that Northrop consciously desired the illness suffered by Mr. Romero or knew with substantial certainty that Mr. Romero's illness would result from his performance of his work functions at the Lake Charles facility.

The intentional act exception to Louisiana's workers' compensation law has been very narrowly construed by Louisiana's courts. *See Reeves v. Structural Pres. Sys.,* 731 So.2d 208, 211 (La. 1999); *Bridges v. Carl E. Woodward, Inc.*, 663 So.2d 458, 463 (La. Ct. App. 4th Cir. 1995), *writ denied*, 666 So.2d 674 (La. 1996). "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Reeves*, 731 So.2d at 213 (citation omitted). "A distinguishing feature in determining whether the conduct complained of meets the 'substantial certainty' test is whether the event has occurred before or whether the injury has manifested itself before." *Abney v. Exxon Corp.*, 755 So.2d 283, 288 (La. Ct. App. 1st Cir. 1999), *writ denied*, 753 So.2d 216 (La. 2000).

In the instant case, the Romeros presented evidence that: (1) the material data safety sheets maintained in Northrop's library outlined the adverse health risks associated with the chemicals used at the Lake Charles facility; (2) safety procedures at the Lake Charles facility were routinely violated; and (3) Northrop's managers and supervisors were informed of the safety violations and associated health risks. Although this evidence may be persuasive in showing that Northrop was negligent, or even grossly negligent in its handling of hazardous chemicals, it fails to show an intentional act falling within the intentional act exception to the Louisiana's workers' compensation law. *See Reeves,* 731 So.2d at 211 (stating that Louisiana courts of appeal "have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment); *Williams v. Gervais F. Favrot*

-7-

*Co., Inc.,* 573 So.2d 533 (La. Ct. App. 4th Cir. 1991), *writ denied*, 576 So.2d 49 (La. 1991) (finding no intentional act exception for violations of OSHA and other accepted industry safety standards); *Jacobsen v. Southeast Distribs., Inc.,* 413 So.2d 995 (La. Ct. App. 4th Cir. 1982), *writ denied*, 415 So.2d 953 (La. 1982) (finding that failure to supply requested safety equipment was not an intentional tort within the meaning of the intentional act exception to Louisiana's workers' compensation law).

Northrop's argument, however, that it lacked knowledge that Mr. Romero was substantially certain to become ill from his exposure to the chemicals used in the Lake Charles facility is well received. Northrop presented OSHA reports indicating that from the time the Lake Charles facility opened in 1992, not a single employee had ever reported an illness resulting from exposure to the chemicals used at the facility until Mr. Romero's incident. Furthermore, Northrop presented affidavits from Mr. Romero's supervisors indicating that they personally performed the same work as requested of Mr. Romero in the same environment, under the same conditions without any respirator protection, and for longer periods of time; all without incident.

Similarly, Mr. Romero's supervisor's comment, "you better watch that stuff, it will get you," fails to impute knowledge on the part of Northrop that Mr. Romero was substantially certain to become ill from performing his work functions, and must be dismissed as workplace banter. The affidavit of Mr. Romero's supervisor stated that he personally performed the same work under the same conditions as was requested of Mr. Romero, and until the time of Mr. Romero's report of illness not a single employee had reported a chemical exposure related illness. Although the

affidavit of one former Northrop employee stated that he had personally suffered adverse health effects from unprotected exposure to the chemicals used at the Lake Charles facility, and had observed other employees experiencing adverse health effects, the affiant failed to state that Northrop was ever informed of the illnesses. Again, this evidence fails to satisfy the substantial certainty test.

Finally, in their brief, the Romeros cite the holdings in *Clark v. Division Seven, Inc.,* 776 So.2d 1262 (La. Ct. App. 4th Cir. 2000), *writ denied*, 787 So.2d 318 (La. 2001) and *Wainwright v. Moreno's, Inc.*, 602 So.2d 734 (La. Ct. App. 3d Cir. 1992) as support for finding that Northrop was substantially certain that illness would result from Mr. Romero's unprotected exposure to the chemicals used at the Lake Charles facility. In *Clark*, a worker sustained injuries when he fell from a roof after being ordered by his supervisor to return to work despite reports from the workers that the roof was wet and slippery due to a recent rainfall. *See Clark,* 776 So.2d at 1264. In *Wainwright*, a worker sustained injuries when a ditch caved in on top of him after being ordered back into the ditch by his supervisor despite warnings that the soil was unstable, and a cave-in might occur. *See Wainwright*, 602 So.2d at 737-39. Although the Romeros attempt to draw a parallel between these cases and his supervisor's order that he continue working despite having been told by a Northrop safety monitor that Mr. Romero was not properly certified to perform the specific task due to his lack of respirator certification, *Clark* and *Wainwright* actually cut against The Romeros. In *Clark*, another worker had actually slipped, and narrowly escaped falling off of the roof just prior to the plaintiff's fall. *See Clark*, 776 So.2d at 1263. In

*Wainwright*, a cave-in had occurred on the day before the accident in question. *See Wainwright*, 602 So.2d at 739. Both *Clark* and *Wainwright* are distinguishable from the instant case in that the events leading to the injuries had actually occurred before. Here, however, the record is devoid of any evidence of a chemical exposure related injury occurring at the Lake Charles facility prior to Mr. Romero's.

After reviewing the record and Louisiana's jurisprudence, we conclude that the Romeros have failed to present factual support to establish that they will be able to satisfy their evidentiary burden at trial of proving that Northrop either intended to injure Mr. Romero or knew that his injury was substantially certain to occur. Accordingly, there is no genuine issue of material fact, and the district court properly granted Northrop's motion for summary judgment.

The Romeros also maintain that in applying the substantial certainty test elucidated in *Bazley*, the district court erred in requiring them to show that Northrop knew that an injury would, in fact, occur. The Romeros assert that if such a standard is allowed to stand, the heightened requirement of showing the actor's specific knowledge that an injury will, in fact, occur will result in employees being required to show subjective intent on the part of their employers in order to prosecute a claim for intentional injury. The Romeros contend that such a standard raises the burden of proof from "incapable of failing," "nearly inevitable," "almost certain," or "virtually sure" to specific knowledge on the part of the employer and would, in effect, eliminate all claims under the substantial certainty test.

This argument is based upon a sentence in the district court's opinion rephrasing the *Reeves* court's discussion on a plaintiff's burden of proof under the substantial certainty test.[1]  It is not necessary, however, for us to reach this issue as we have found, after our *de novo* review, that the Romeros have failed to establish that a genuine issue of material fact existed as to whether Northrop knew that Mr. Romero was substantially certain to become ill as a result of continued exposure to hazardous substances at the Lake Charles facility.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

---

[1]The district court opinion reads in relevant part:

> A "substantial certainty" takes the consequences out of the realm of possibility or risk.  *Reeves* at 212 (quoting Malone & Johnson, *Louisiana Civil Law Treatise, Volume 14, Worker's Compensation Law & Practice*, § 365, p. 208).  In other words, a substantial certainty requires a person to *know* an injury will occur.