THIBODEAUX, Chief Judge,
dissenting in part.
hi agree with the majority on all issues, except its treatment of intentional tort. I would reverse the judgment of the trial court on this issue.
The trial court performed no legal or factual analysis in its written reasons for granting summary judgment to the defendants on the issue of intentional tort. The court merely stated the defendant’s contentions that Mr. Hebert acknowledged that the Richards had been like family to him and further acknowledged his belief that they would not assign him a task that *907 would almost certainly result in his injury. The trial court later stated that summary judgment was granted on this issue “for the reasons more fully set forth above.” The record does not support summary judgment on the issue of intentional tort.
The record reveals that deer netting was a dangerous activity, that the harness was nine to twelve years old at the time of Mr. Hebert’s injury, and that the harness was a climbing harness not intended for deer netting. The record further reveals that the instruction on the use of the harness lasted five to fifteen minutes in 2003, and that the hookups for the harness were further modified in the four years between Mr. Hebert’s first deer netting activity in 2003 and the time of his accident in 2007. Moreover, another Industrial employee, Luis Cedillo, had fallen from the | ¡.helicopter using the same harness and restraint system during a deer netting activity in Mexico, prior to Mr. Hebert’s fall.
To succeed on an intentional tort claim, the employee must prove the employer’s intent which is defined as: (1) consciously desiring the physical results of the particular conduct, or (2) knowledge that the physical results were substantially certain to follow the conduct. Bazley v. Tortorich, 397 So.2d 475 (La.1981). Here, Mr. Hebert does not assert that the defendants consciously desired that he suffer injury. Rather, he contends that the defendants, Industrial and GMI, knew that physical injuries were substantially certain to follow the continued use of the harness and helicopter as they were being used for deer netting activities in Mexico. The question does not revolve around any past belief or trust by Mr. Hebert in the Richard family, for whom he had worked since he was approximately eighteen years old. Knowledge is the condition of the defendant’s mind. See Carey v. UMC (United Mechanical Contractors), 553 So.2d 472 (La.1989). The question is the knowledge by GMI and Industrial that physical injuries were substantially certain to occur with the harness and helicopter modifications they incorporated for the deer netting activities in Mexico.
In Wainwright v. Moreno’s, Inc., 602 So.2d 734 (La.App. 3 Cir.1992), an employee, injured when a ten foot ditch in which he was working caved in on him, alleged an intentional act by his employer where the employer’s foreman ordered the employee into the ditch which had caved in the day before. In affirming the trial court’s judgment in favor of the employee, our court discussed the Louisiana Supreme Court’s decision in Bazley and the meaning of intentional tort:
The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two |3prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. Intent is not, however, limited to consequences which are desired. If the actor - knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.
Wainwright, 602 So.2d at 738 (quoting Bazley, 397 So.2d at 482) (citations omitted). (emphasis added).
In Wainwright, testimony showed that the employer knew that the dirt was sloughing off the sides of the ditch. The court also considered evidence that the Occupational Safety and Health Act (OSHA) required that the sides of a ditch in unstable or soft material, “which sides are more than five feet in depth, shall be shored, sheeted, braced, sloped, or other *908 wise supported.” Wainwright, 602 So.2d at 739. There, based upon the facts, we found that the employer knew that the cave-in was substantially certain to follow.
Here, Mr. Hebert cited numerous violations of FAA (Federal Aviation Act) rules regarding Mike Richard’s failures to report or log the flights and the harness and helicopter modifications in Mexico. Mr. Hebert further argues that the conversion of the harness violated OSHA (Occupational Safety and Health Act) and ANSI (American National Standards Institute) standards and violated the LPLA (Louisiana Products Liability Act). A violation of safety standards, without more, is generally not sufficient for proving an intentional tort. See Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4 Cir.), writ denied, 576 So.2d 49 (La.1991). In this case, however, there is more, and the use, conversion, and modification of an old climbing harness as fall protection, the modification of an aircraft for a questionable “cash only” activity in a foreign country, and the assertion of numerous regulatory violations, along with the testimony, are sufficient to at least Lcreate genuine issues of material fact precluding summary judgment on what the employer was thinking.
Paul Marks testified that Mike Richard talked to him around 2003 about a harness for holding a deer netter in a helicopter, and Marks gave Richard the climbing harness that he happened to have in his truck. Marks further testified that the lanyard that came with the harness was too long, and that he had purchased a shorter strip of webbing for Industrial’s use. Mike Richard testified that he did not consult any OSHA, ANSI, or CSA regulations when he devised the restraint system and helicopter modifications for the deer netting activities. Additionally, Paul Marks testified that in 2003 he had spent only five to fifteen minutes showing Mr. Hebert, Neil Gremillion, and Luis Cedillo how to use the harness and webbing.
Marks further testified that Mike Richard had changed the configuration of the restraint system before Mr. Hebert’s fall in 2007, using a carabiner hook-up instead of the closed loop system that Marks had suggested. Mike Richard testified that, where seconds count, the carabiner provided a quicker connect. The record reveals that there was no significant safety training on deer netting from a helicopter, with little more than Mike Richards’s reminder to buckle up. Various testimony indicated that deer netting could be an adventure, a young man’s sport, but that it was very physical and involved hard work for about twelve hours a day, from sun-up to sundown. Evidence of fall instruction or training on physical techniques for minimizing injury should one fall from the helicopter while netting deer is non-existent.
The first circuit in Abney v. Exxon Corp., 98-0911 (La.App. 1 Cir. 9/24/99), 755 So.2d 283, writ denied, 99-3053 (La.1/14/00), 753 So.2d 216, affirmed the trial court’s award of damages to welders who brought a tort action against their | ¡¡employer for exposure to known human carcinogens. There, the welders complained that each time they worked in the tower they suffered nose bleeds and health problems. The court articulated that “[a] distinguishing feature in determining whether the conduct complained of meets the ‘substantial certainty test is whether the event has occurred before or whether the injury has manifested itself before.” Id. at 288. In the present case, the event, a fall from the helicopter during deer netting, had occurred before.
In Clark v. Division Seven, Inc., 99-3079 (La.App. 4 Cir. 12/20/00), 776 So.2d 1262, writ denied, 01-183 (La.3/16/01), 787 So.2d 318, the fourth circuit affirmed the trial court’s finding of intentional tort in favor of a roofer who sustained injuries *909 when he fell from a wet roof while working on a church about three stories high. There, the employer required the roofer to return to the roof after each heavy rainfall, even after the roofers had complained that the roof was too slippery and another roofer had slid off the roof, but caught himself on a block of wood before hitting the ground.
Similarly, Mr. Hebert asserts that he had recently stated he was too old to do the deer netting and that it was unsafe. He told Mike Richard that he did not want to go in 2007 when the accident occurred, but Richard replied that he wanted him there. Mr. Hebert had not done the activity since the first trip approximately four years before, and Mike Richard knew that Mr. Hebert did not want to go. Deer netting was not part of Mr. Richard’s regular duties. Another Industrial employee, Luis Cedillo, had fallen from the same helicopter, modified in Mexico, using the same harness that Mr. Hebert used when he fell. Luis Cedillo did not report any injuries and testified that he had simply forgotten to buckle up. Testimony indicated that Mr. Cedillo netted regularly and was considered a flying squirrel because of his |fisize and agility, and that he had hit the ground running. Mr. Hebert, however, was a big man, weighing 250 to 270 pounds, and the restraint system had to be adjusted for him. Mr. Hebert asserts that he went because he feared losing his job with Industrial.
In view of Wainwright, Abney, and Clark, the total facts and circumstances at least create material issues of fact that preclude the granting of the defendants’ motion for summary judgment on Mr. Hebert’s alternative claim of intentional tort. See also Williams v. Ingredient Tech. Corp., 470 So.2d 283 (La.App. 5 Cir.1985) (reversed summary judgment for the defendants due to issues of fact regarding whether supervisor must have believed and known that injury was substantially certain to result from his instructions); and see McDonald v. Gonzales, 479 So.2d 9 (La.App. 5 Cir.1985) (reversed summary judgment due to issues of fact regarding whether the foreman who ordered the painter to continue working after his complaints of dizziness was substantially certain that the result would follow).
Finally, the majority applies the incorrect methodology in its determination that summary judgment was appropriate on this issue. The majority’s assertion that “we find no evidence from Plaintiff indicating that he will be able to establish that the employer either consciously desired this result or knew that the physical injury was substantially certain to follow the conduct” is simply wrong. The test is not whether a plaintiff would be able to establish an element of proof; rather, the test is whether one could establish it. David W. Robertson, Summary Judgment and Burden of Proof, 45 La. B.J. 331 (1997).
For the foregoing reasons, I respectfully dissent in part.