# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31208
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2014

Lyle W. Cayce
Clerk

LONNIE HARPER,

Plaintiff - Appellant

v.

BOISE PAPER HOLDINGS, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:13-CV-2537

Before BENAVIDES, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

This is an appeal from a Rule 12(b)(6) dismissal of a tort case brought by the employee against the former employer. Finding no error, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY

On August 6, 2012, Plaintiff-Appellant Lonnie Harper ("Harper") was employed by the Boise Paper Mill, which was then owned by Boise Paper Holdings, L.L.C. ("Boise"). That day, Harper was operating a lime kiln grinder

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31208

and an alarm sounded, indicating that the grinder had shut down because it had become clogged. Harper inspected the grinder and observed materials that were too large to pass through it. Boise and its maintenance contractor had placed a 50-pound pry bar at the site for the purpose of dislodging material that clogged the grinder. Using this pry bar, Harper attempted to dislodge the material clogging the grinder, and a large amount of material hit the pry bar, which struck his head. He suffered a serious head and brain injury and was air-lifted by helicopter to St. Patrick's Hospital in Lake Charles, Louisiana.

Additionally, on the day of the accident, Boise sent its safety director, David Ludolph ("Ludolph") to the hospital. Harper alleges that Ludolph "assumed manipulative control over the care being rendered to" Harper. Ludolph had Boise's company doctor, Dr. Taylor, release Harper "to work in an effort to obfuscate and masquerade around the fact that this catastrophic event resulted in lost man hours." Acting on Boise's behalf, Ludolph demanded that Harper return to work even though Harper was in critical condition because Boise did not want to record a "lost time accident."

On July 30, 2013, Harper brought a tort action in the 36th Judicial District Court for the Parish of Beauregard against Boise.[1] Harper alleged that Boise was liable for the "intentional tort associated with the removal of safeguards that resulted in the injuries and damages" he suffered. Harper also alleged that Boise was liable for Ludolph's intentional infliction of emotional distress. Boise removed the suit to the United States District Court for the Western District of Louisiana, alleging complete diversity of citizenship. Boise filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On November 14, 2013, the district

---

[1] Harper also named Metso Paper USA. However, Harper voluntarily dismissed Metso Paper USA on September 26, 2013.

2

No. 13-31208

court granted the motion and dismissed Harper's complaint for failure to state a claim. Harper filed a timely notice of appeal.

II.     ANALYSIS

A. Intentional Tort

Harper contends that the district court erred in dismissing his complaint for failure to state a claim. We review de novo a dismissal for failure to state a claim, applying the standard used to review a dismissal under Rule 12(b)(6). *Hart v. Hairston*, 343 F.3d 762, 763–64 (5th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted).

The Supreme Court of Louisiana has explained that: "(1) under the provisions of Louisiana Revised Statues § 23:1032, a worker is ordinarily limited to recovering workers' compensation benefits rather than tort damages for work-related injuries; and (2) Section 1032(B) provides an exception to this exclusivity when a worker is injured as a result of an employer's intentional act." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006) (citing *Cole v. State Dep't of Public Safety and Corrections,* 825 So. 2d 1134 (La. 2002)). The exception to the rule allows an employee who suffers an intentional battery at the hands of a co-worker to obtain tort recovery. *Id.* The term "intentional" means that the tortfeasor "either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from

his conduct, whatever his desire may be as to that result." *Id.* (citations and internal quotation marks omitted).

Harper's complaint did not allege that Boise consciously desired that he would sustain his injuries. Instead, Harper alleged that Boise "knew or should have known that an injury was [s]o imminent that Boise's neglect became an intentional risk to every operator associated with the lime kiln." Petition at ¶ 22. To the extent that Harper argues that Boise *should have known* that he would be injured, he is simply alleging a negligence claim and thus fails to state a claim for an intentional tort. *See Kent v. Gulf States Utils. Co.*, 418 So. 2d 493, 497 (La. 1982) (explaining that in a typical negligence case, the plaintiff must prove that the defendant knew or should have known of the risk). Indeed, even gross negligence does not state a claim for an intentional tort. *Gallant v. Transcontinental Drilling Co.*, 471 So. 2d 858, 861 (La. App. 2d Cir. 1985) (gross negligence is an inadequate basis to find that the employer knew to a substantial certainty that its conduct would cause injury).

To the extent Harper argues that Boise knew he would be injured, his complaint does not allege facts to show that his injuries were substantially certain to follow. The Louisiana Supreme Court has explained that the phrase "substantially certain to follow" means more than a reasonable probability that an injury will occur, and "certain" is defined as "inevitable or incapable of failing." *Reeves v. Structural Preservation Systems,* 731 So. 2d 208, 213 (La. 1999) (internal quotation marks and citations omitted). The Court cited precedent holding that an employer's knowledge that the use of a dangerous machine creates a high probability that an employee would be injured is insufficient to meet the substantial certainty test. *Id.* at 213.

More specifically, the Louisiana Supreme Court recognized that an intentional tort was found when an employer repeatedly exposed the employee to a chemical, and the chemical had sickened the employee on two prior

occasions. *Id.* at 212 (citing *Trahan v. Trans–Louisiana Gas Co., Inc.*, 618 So. 2d 30, 31–32 (La. App. 3d Cir. 1993)). In a similar vein, an intentional tort was found when an employer ordered an employee to work in a ditch that had imploded the previous day, had not been reinforced, and appeared as if it would implode again. *Id.* (citing *Wainwright v. Moreno's, Inc.*, 602 So. 2d 734, 739 (La. App. 3d Cir. 1992)).

On the other hand, the Louisiana Supreme Court contrasted cases in which it was held that violations of safety standards or failing to provide safety equipment did not establish that the employer knew to a substantial certainty that an injury would occur. *Id.* (collecting cases). For example, in *Williams v. Gervais F. Favrot Co., Inc.,* two employers were killed when a rebar cage fell from the twenty-second floor of a building under construction. 573 So. 2d 533, 534 (La. App. 4th Cir.), *writ denied*, 576 So. 2d 49 (La. 1991). One employee was inside the cage as it was lifted, and the other employee worker stood on the form to guide the cage. *Id.* at 536. The form had not been braced, and the form with the cage fell off of the building. The "braces were for safety and proper alignment." *Id.* at 537. The superintendent admitted that the "crane should not have lifted the cage with a worker inside, and the danger from an unbraced form should have been obvious to a carpenter foreman if he were watching." *Id.* at 536. Nonetheless, the Louisiana appellate court held that the employer did not know to a substantial certainty that an injury would occur. *Id.* at 542.

Here, the facts alleged in Harper's complaint fall in line with the cases that held that violations of safety standards or failing to provide safety equipment did not demonstrate that the employer knew to a substantial certainty that an injury would occur. Harper's argument that the instant tort

claim constitutes an intentional tort is without merit.[2] Thus, this claim does not fall within the exception to the rule that limits recovery to workers' compensation benefits.

### B. Intentional Infliction of Emotional Distress

Harper also contends that the district court erred in dismissing his claim of intentional infliction of emotional distress for failure to state a claim under Rule 12(b)(6). For a plaintiff to recover for the tort of intentional infliction of emotional distress, he must demonstrate "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.,* 585 So. 2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has recognized that, in a workplace environment, the tort of intentional infliction of emotional distress is generally "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* at 1210.

In his complaint, Harper alleged that Ludolph "literally demanded that [he] return to work while he was in a critical condition because of his head injury *for no other purpose than to pretend for industrial purposes that there was no 'lost time accident.'*" Petition at ¶ 17 (emphasis added). Harper further alleged that Ludolph, in his capacity as the safety supervisor, intended to inflict emotional distress when he valued "corporate profits over patient safety in an effort to hide the fact of this injury and the fact that this injury was a 'lost time accident' for the papermill." *Id.*

---

[2] Harper also refers to a finding against Boise made by the Occupational Safety & Health Administration ("OSHA"). However, a violation of OSHA standards is not an adequate basis for finding that the employer knew to a substantial certainty that its conduct would cause injury or death. *Williams,* 573 So. 2d at 541.

No. 13-31208

We first note that Harper's complaint does not allege a pattern of deliberate, repeated harassment over a period of time in the workplace. *White*, 585 So. 2d at 1210. Instead, Harper alleges a single instance of Ludolph demanding that he return to work. Moreover, even assuming *arguendo* that Harper has shown that Ludolph's demand was extreme and outrageous and that he suffered severe emotional distress, Harper has failed to allege the third element of intentional infliction of emotional distress—that Ludolph intended to inflict the emotional distress. Indeed, as set forth above, Harper's complaint alleges that Ludolph's demand to return to work had "no other purpose than to pretend for industrial purposes that there was no 'lost time accident.'" Petition at ¶ 17. The complaint therefore admits that Ludolph did not demand that Harper return to work for the purpose of inflicting severe emotional distress. Harper's complaint fails to state a claim for intentional infliction of emotional distress.

Accordingly, the judgment of the district court is AFFIRMED.