United States Court of Appeals
Fifth Circuit

**F I L E D**

October 3, 2006

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 17, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30020

_____

BRENDA LARROQUETTE,

Plaintiff-Appellant,

versus

CARDINAL HEALTH 200, INC., ET AL.,

Defendants

TOURO INFIRMARY; ANSELL HEALTHCARE PRODUCTS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana

_____

Before JONES, Chief Judge, KING, and DENNIS, Circuit

Judges.

DENNIS, Circuit Judge:

     This diversity jurisdiction case queries whether the

1

plaintiff, Brenda Larroquette, a Louisiana nurse anesthetist who developed an allergy to latex gloves after using them on the job for 24 years, improperly joined her battery action against her former in-state hospital employer, Touro Infirmary, with her products liability actions against non-resident latex glove manufacturers to defeat federal jurisdiction and removal. The district court decided that the joinder was improper, denied plaintiff's remand motion, and dismissed her action against Touro. We affirm. Joinder of a non-diverse party is improper if there is no reasonable basis to predict that the plaintiff might be able to recover against that party. Louisiana statutes make workers' compensation recovery an employee's exclusive remedy for a work-related injury caused by the employer's conduct, except when suit is based on an intentional tort. Under this exception, "intent" means that the employer either (1) consciously desired the physical result of its act; or (2) knew, to a substantial certainty, that the result would follow from its conduct. Here, there is no reasonable basis to predict that Ms. Larroquette might be

able to recover against Touro for an intentional act of battery. She alleges Touro caused her to develop latex allergy by requiring her to work with latex gloves for approximately four years. But she does not contend that Touro desired to harm her. Nor does she allege facts that support a finding that Touro knew to a substantial certainty that the use of latex gloves would harm her. Her allegations might support a claim of negligence or recklessness, but they do not support a finding of battery or any other unlawful intentional act. Therefore, the plaintiff's joinder of her battery action against the non-diverse Touro Infirmary was improper, as the district court correctly decided.

## I.  Facts Alleged

Essentially, Ms. Larroquette's battery claim is framed by the following pertinent allegations of facts and tacit admissions of facts in her pleadings:

(1) Ms. Larroquette used latex gloves in her work as a nurse anesthetist from 1979 until 2000 without symptoms of latex sensitization;

(2) Ms. Larroquette used latex gloves as a nurse

3

anesthetist for Touro from 1997 to 2000 without symptoms of latex sensitization;

(3) while working for Touro in 2000, she had an anaphylactic reaction requiring emergency hospital treatment, but her doctors did not associate that reaction with latex;

(4) during her employment by Touro from 1997 to 2001, Touro provided and required that its employees use latex gloves, stocking its entire facility with them;

(5) Touro knew of medical studies showing that 8 to 12 percent of health care workers are susceptible to latex sensitization, a precursor to a latex allergy;

(6) by October of 2000, 195 Touro employees had developed some form of latex allergy;

(7) a national health organization, in addition to two Touro staff members, urged Touro to take greater precautions to prevent latex allergies;

(8) in 2003, after leaving Touro's employ in 2001, Ms. Larroquette suffered a second reaction and was diagnosed with Type I Latex Allergy; and

(9) Ms. Larroquette's complaint does not allege, and in

4

effect tacitly admits, that Touro did not have any feasible means of predicting which employees would develop latex sensitization.

## II.  Procedural History

In 2003, Ms. Larroquette filed suit in the Civil District Court for the Parish of Orleans, Louisiana, against: Touro Infirmary, a Louisiana non-profit hospital corporation; Cardinal Health 200, Inc., and Ansell Healthcare Products, Inc., foreign corporations authorized to do business in Louisiana; Kimberly Clark Corporation, and Johnson & Johnson Medical, Inc., foreign corporations not licensed to do business in Louisiana; and Touro's insurers, Safety National Casualty Corporation and St. Paul Fire and Marine Insurance Company.

After setting forth the allegations and factual contentions described in part I, ante, Ms. Larroquette's complaint asserts, as a legal conclusion without any additional factual support, that because Touro required its employees to use latex gloves, Touro had substantially certain knowledge that harmful contact and

5

injury would result to Ms. Larroquette, and Touro thereby committed the intentional tort of battery upon her. Thus, she asserts that Touro and its liability insurers are liable to her for damages.

Further, her complaint avers that the defendant latex glove manufacturers made and distributed the latex gloves she used from 1979 to 2003; that these gloves proximately caused her latex allergy and other damages; that the latex gloves were unreasonably dangerous in design and because of inadequate warning; and that the latex glove manufacturers are therefore liable to her under the Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800.51 et seq (1988).

Cardinal Health 200, Inc., removed the case to the federal court, where it and the other defendants asserted that Touro was improperly joined in an effort to defeat diversity jurisdiction. Ms. Larroquette moved to remand the case to state court, arguing that Touro was properly joined, thus foreclosing diversity jurisdiction. The district court accepted the defendants' argument, dismissed Touro from the case, and denied Ms.

6

Larroquette's motion to remand.

### III. Improper Joinder

As we observed in Smallwood v. Illinois Cent. R. Co.,

385 F.3d 568, 572 (5th Cir. 2004)(en banc):

> The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court. The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied. Relatedly, a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction.

Smallwood, 385 F.3d at 572 (footnotes omitted).

Synthesizing these statutory provisions, we have recognized two tests for establishing improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state

7

court." Id. at 573 (internal quotations and citation omitted). We have further explained the second test as an inquiry into "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. at 573 (internal citation omitted). In the present case, only the second test is pertinent.

In applying the second test, we ordinarily conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the in-state defendant. Id. In a few cases, in which a plaintiff has stated a claim but has misstated or omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. Id. We have no need to pierce the pleadings here.

IV. Louisiana Law: Workers' Compensation & Battery

The Supreme Court of Louisiana, in <u>Cole v. State Department of Public Safety and Corrections</u>, 825 So.2d 1134 (La. 2002), reaffirmed the following principles: (1) under the provisions of Louisiana Revised Statutes § 23:1032, a worker is ordinarily limited to recovering workers' compensation benefits rather than tort damages for work-related injuries; and (2) Section 1032(B) provides an exception to this exclusivity when a worker is injured as a result of an employer's intentional act. This exception allows tort recovery by an employee-plaintiff who sustains damages as a result of an intentional battery committed by a co-employee during the course and scope of employment, i.e., the exclusivity provisions of the Louisiana Workers' Compensation Act do not apply in such a case. <u>Id.</u> at 1138-39 (internal citations omitted).

The court made clear, however, that in this context "intent" or "intentional" continues to mean that the person "'either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result

is substantially certain to follow from his conduct, whatever his desire may be as to that result.'"  <u>Id.</u> at 1140 (quoting <u>Reeves v. Structural Preservation Systems</u>, 731 So.2d 208, 211 (La. 1999) and <u>Bazley v. Tortorich</u>, 397 So.2d 475, 481 (La. 1981)).

The <u>Cole</u> court also reaffirmed the holding of <u>Caudle v. Betts</u>, 512 So.2d 389 (La. 1987):

> In a battery  "the <u>intention</u> need not be malicious nor need it be an <u>intention</u> to inflict actual damage, but it is sufficient if the actor <u>intends</u> to inflict either a harmful or offensive contact without the other's consent[; and] that the defendant may be liable although <u>intending</u> nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good."

<u>Id.</u> at 1141(emphasis added).  Nevertheless, the court plainly did not relax the requirement that, in order to recover from her employer for an intentional work-related tort such as battery, an employee must prove that the employer "either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." <u>Bazley</u>, 397 So.2d at 482.

## V. Analysis

10

Applying the foregoing principles to the factual allegations of Ms. Larroquette's complaint, we conclude that the joinder of the battery suit against Touro with the products liability action against the foreign corporations was improper. There is no reasonable basis to predict that Ms. Larroquette might be able to recover from Touro for intentionally causing her sensitization and allergy to latex. Assuming without deciding that Touro's actions and policy in requiring its employees to use latex gloves by stocking its facilities with only that type of gloves was causally related to Ms. Larroquette's latex sensitization, her factual contentions cannot reasonably support a finding that Touro either desired to cause her harm or knew to a substantial certainty that her latex sensitization or allergy would result from its conduct.

According to her pleadings, Ms. Larroquette safely used latex gloves in her work with other employers for 18 years before she was hired by Touro in 1997. Until the third of her four years at Touro, the time at which she suffered her first reaction, she had shown no sign of

11

being susceptible of an allergy to latex. Even then, her doctors failed to recognize her symptoms as being latex-related. Thus, Touro evidently was not on notice of her susceptibility to any sort of latex reaction until 2003, well after she had gone to work for a different hospital.

Furthermore, Ms. Larroquette alleges facts that preclude a finding that she or Touro knew with substantial certainty that she was susceptible to latex sensitization. For example, she alleges that Touro was aware of medical studies indicating that 8 to 12 percent of all healthcare workers exposed to latex in 1997 became sensitized to it; conversely, it necessarily follows from these studies, that 88 to 92 percent of all healthcare workers exposed to latex in 1997 were not sensitized. She alleges that by October of 2000, 195 Touro employees had developed a latex allergy; she does not, however, allege that this exceeded the 8 to 12 percent normal latex allergy rate reported by the medical studies to which Touro had access. Because her complaint neither gives the time frame of the reported latex allergies nor the size of the work force involved, we must assume that

this information, if available, would not have been favorable to her case. Accordingly, her factual contentions foreclose rather than support the proposition that Touro knew to a substantial certainty that Ms. Larroquette would develop an allergy from her exposure to latex gloves and particles during her employment at Touro from 1997 to 2001.

The procedural principles she relies upon do not lead to a different conclusion. We certainly adhere to the precept that "[a] Rule 12(b)(6) dismissal is not warranted just because the district court 'believes the plaintiff is unlikely to prevail on the merits.'" United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004) (quoting Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)). We further agree that "'[e]ven if it seems 'almost a certainty to the court that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim." Id. (quoting Clark, 794 F.2d at 970).

These precepts are corollaries of the principal

13

inquiry we undertake on a defendant's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. In that respect, it is well-settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This principle, of course, is very similar to the test we apply to determine whether joinder is improper in a diversity removal case, viz., whether there is no reasonable basis to predict that plaintiff might be able to recover against an in-state defendant. Smallwood, 385 F.3d at 573.

Applications of those principles, precepts, and tests to the instant case, however, do not assist Ms. Larroquette in overcoming the defendants' claims of improper joinder. The facts she alleges simply do not support her legal claim or provide a reasonable basis for predicting that she might be able to recover against Touro for the intentional tort of battery. We do not

14

doubt her ability to prove the facts she alleges, but those factual contentions make it appear beyond doubt that she can prove no set of facts in support of her claim which would entitle her to relief against Touro. In sum, the facts she alleges bear the earmarks only of Touro's negligence, or at most of its recklessness, rather than of Touro's desire to cause harm to Ms. Larroquette or of its certain knowledge of future harm to her.

Further, Ms. Larroquette attempts to argue by analogy from Louisiana battery cases in which plaintiffs have succeeded at trial or in opposing summary judgment under the substantially certain knowledge theory. But her exercise only serves to distinguish the present case from those cases and confirm that there is no reasonable basis to predict that she might be able to recover from Touro in tort, rather than in workers' compensation.

For example, in <u>Swope v. Columbian Chemicals Co.</u>, 281 F.3d 185 (5th Cir. 2002), this court found that the plaintiff had successfully opposed a motion for summary judgment by presenting cogent evidence that the

15

employer's officers knew full well that the plaintiff had been required to inhale dangerous ozone on a regular basis during his work and that ozone inhalation is immediately organically damaging to all humans.[1] In other

---

[1] The plaintiffs provided a plethora of evidence, a small smattering of which we describe here: (1) Columbian had been provided Material Safety Data Sheets (MSDS) regarding ozone for at least ten, and probably twenty, years prior to the plaintiff's disability, some of which provided this warning: "DANGER! OZONE IS A HIGHLY TOXIC, IRRITANT GAS! MAY BE FATAL IF INHALED! MAY CAUSE DAMAGE TO THE LUNGS, RESPIRATORY SYSTEM, AND EYES! DO NOT GET IN EYES, ON SKIN, OR ON CLOTHING. DO NOT BREATHE GAS OR VAPOR. USE ONLY WITH ADEQUATE VENTILATION. WASH THOROUGHLY AFTER HANDLING. KEEP AWAY FROM COMBUSTIBLE MATERIALS." The MSDS also contained other warnings concerning long-term exposure to various concentrations of ozone, including: scarring and thickening of small air passages which could lead to chronic lung disease; earlier and more severe symptoms for those currently suffering from lung disease; possible increased susceptibility to lung disease and infection; and uncontrollable coughing spasms; (2) deposition testimony demonstrating Columbian's knowledge that it required its employees to be exposed without protective equipment; (3) testimony of numerous witnesses that Columbian knew that inhalation of ozone could be fatal to workers and damage their lungs; (4) information Columbian had received from an industrial hygienist who toured their plant, (a) warning it of the danger of ozone damage to workers, namely the plant's faulty design/maintenance, (b) suggesting implementation of a preventative maintenance program,(c) informing it of workers' complaints of symptoms associated with ozone exposure, and (d) warning it that chronic exposure decreases workers' ability to detect the ozone odor; (5) information Columbian had received from an industrial hygiene consulting group, which advised Columbian that excessive ozone concentrations were found and would translate into excessive employee exposures; (6) testimony that despite surveys and recommendations by the workers' union, Columbian did not purchase or install any ozone monitors until after the plaintiff's final inhalation; the monitors were later removed because the alarms sounded so frequently (every time a person walked in or out of the buildings); (7) detailed testimony of repeated complaints by numerous workers to Columbian due to frequent ozone exposure incidents with serious effects;

16

words, for purposes of testing the summary judgment motion, it could be reasonably inferred that the employer knew to a substantial certainty that the plaintiff was being injured by his employer-required ozone inhalation. The operative facts alleged by Ms. Larroquette do not rise to the level of intent, however; they merely tend to establish that Touro knew that there was an 8 to 12 percent risk that Ms. Larroquette and its other healthcare employees could develop latex reactions from using latex gloves.

In Robinson v. North American Salt Co., 02-1869 (La. App. 1st Cir. 6/27/03), 865 So.2d 98, the state court of appeal decided that the jury could have reasonably concluded that the employer knew that the employee's entanglement and crushing injury by a moving conveyor belt was substantially certain to occur based on evidence that: (1) the employee was required to chip rust away from the conveyor frame 8 to 12 inches from an exposed,

---

(8)testimony of numerous witnesses regarding Columbian's failure to educate its workers on the effects of ozone exposure and its lackadaisical attitude regarding the same. Swope v. Columbian Chemicals Co., 281 F.3d 185, 197-201 (5th Cir. 2002).

17

moving conveyor belt while he was suspended in air in the unstable bucket of a man lift; (2) the employer's safety policy prohibited making employees work near a conveyor belt unless its power and mobility had been completely shut down and locked out; (3) the plaintiff employee and other employees specifically protested to the employer that their being forced to perform rust chipping work so near a moving conveyor belt was patently dangerous; and (4) the employee's expert mechanical engineer testified that the plaintiff's specific type of injury by entanglement with the moving conveyor belt was "inevitable" or "incapable of failing." Id. at 105-08. Here, unlike the statistical 8 to 12 percent risk of latex sensitization based on somewhat removed medical studies known to Ms. Larroquette's employer, Mr. Robinson's employer and its project engineer were intimately familiar with the open, obvious, and deadly danger to which they deliberately exposed him for the sake of avoiding the overhead of shutting down the salt mine operations during the rust chipping.

Ms. Larroquette cites Caudle v. Betts, 512 So.2d 389

(La. 1987), although its seriously contested issue involved the extent of damages rather than whether the harmful or offensive contact was intentional. In <u>Caudle</u>, the trial judge erroneously found after a bench trial that no battery had occurred; that although the employer's CEO intended to electrically shock the plaintiff, an employee, as a practical joke, he did not intend to injure him beyond a momentary, unpleasant jolt; and, further, that the serious injury to the employee's occipital nerve which resulted was neither foreseeable nor intentional.[2] The Louisiana Supreme Court reversed and explained: "It is undisputed that when Mr. Betts shocked the employee, Mr. Caudle, with the condenser, he intended the contact to be offensive and at least slightly painful or harmful. The fact that he did so as a practical joke and did not intend to inflict actual damage does not render him immune from liability."

---

[2] As explained by an eminent Louisiana scholar when discussing <u>Caudle</u>, "The trial judge found that defendant intended to shock plaintiff, but did not intend to injure him beyond a passing, relatively minor electric shock. In other words, he intended the act and probably the offensive consequences, but not the unforeseen harmful consequences." Wex S. Malone & H. Alston Johnson III, 14 <u>Louisiana Civil Law Treatise-Workers' Compensation</u>, § 365 (4th ed. 2002).

19

<u>Caudle</u>, 512 So. 2d at 392.[3] Ms. Larroquette, on the other hand, does not allege that Touro knowingly or purposefully acted to harm her, and she fails to allege facts amounting to a reasonable basis to predict that she might recover in tort against Touro.

Finally, in <u>Abney v. Exxon Corp.</u>, 98-0911 (La. App. 1st Cir. 9/24/99), 755 So.2d 283, the court of appeal affirmed the trial court's finding that the employer committed intentional torts upon four welder employees. The employees testified that they were required to weld sheets of stainless steel to the inside surface of a fractionation tower while being exposed to known human carcinogens without protective equipment. They became ill and eventually were either transferred or quit work because of the working conditions on that particular job. Before doing so, the employees suffered nose bleeds and other symptoms every time they went into the tower, and they informed the employer's supervisory personnel of

---

[3] <u>Id.</u> ("[E]very first-year tort student is well versed in the rule of the 'eggshell skull' plaintiff, and his right to collect for even unexpected consequences of a relatively minor contact. Thus the fact that the actor may not have intended the full consequences of his action is of no significance.").

these problems.  Ms. Larroquette's exposure to the 8 to 12 percent risk of latex reaction or sensitization did not produce any symptoms that either she or her doctors identified as latex related until she experienced her second reaction in 2003, some two years after leaving Touro's employ.

CONCLUSION

For these reasons, the judgment of the district court denying the plaintiff's motion to remand and dismissing her action, after concluding that the joinder was improper, is AFFIRMED.